IN UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

*FILED*

*JUN 08 2001*

*Phil Lombardi, Clerk*
*U.S. DISTRICT COURT*

———————————————— X
:
NOVA HEALTH SYSTEMS, DBA REPRODUCTIVE       :
SERVICES, on behalf of itself, its staff and its   :
patients,                                  :
:
                    Plaintiff,             :
:
vs.                                        :       Civil Case No. 01 cv 0419K(E)
:
MIKE FOGARTY, in his Official Capacity as   :
Chief Executive Officer of the Oklahoma     :
Health Care Authority, *et al.*            :
:
                    Defendants.            :
———————————————— X


**PLAINTIFF'S OPENING MEMORANDUM IN SUPPORT OF**
**MOTION FOR A TEMPORARY RESTRAINING ORDER**
**AND/OR A PRELIMINARY INJUNCTION**


Bebe J. Anderson*              M. M. Hardwick, OBA #3847
The Center for Reproductive    P.O. Box 35975
    Law & Policy               Tulsa, OK  74153
120 Wall Street, 14th Floor    Tulsa, OK 74135
New York, NY 10005             (918) 749-3313
(917) 637-3600

                    Counsel for Plaintiff

    *Application for admission *pro hac vice* being filed.



# TABLE OF CONTENTS

Table of Authorities ..................................................................................................... ii

I. .........Introduction...........................................................................................................1

II.     The Statute ....................................................................................................1

III.    Statement of Facts.........................................................................................2

IV.     Argument .......................................................................................................5

        A.  Plaintiff Has a Substantial Likelihood of Prevailing
            on the Merits. ...............................................................................6

            1.  The Act is Unconstitutionally Vague. ..................................7

            2.  The Act Imposes an Undue Burden on Young Women........................14

                a.  The Act Violates the Privacy Rights of Minors
                    Seeking Abortions by Imposing a Parental
                    Involvement Requirement Without Providing
                    Any Mechanism by Which a Minor May Obtain
                    an Abortion Without Parental Consent or
                    Knowledge if She is Mature or the Abortion
                    Would be in Her Best Interests.........................................15

                b.  The Act Violates the Privacy Rights of Minors
                    Seeking Abortions by Imposing a Parental
                    Involvement Requirement Without Providing
                    Any Medical Emergency Exception....................................20

        B.  Plaintiff Will Suffer Immediate and Irreparable Harm
            Unless This Court Grants a Temporary Restraining Order
            or a Preliminary Injunction. ...........................................................21

        C.  The Threatened Injury to the Plaintiff Outweighs Any
            Injury to the Defendants.................................................................22

        D.  An Injunction Would Not Be Adverse to the Public Interest ....................23

V.      Conclusion ....................................................................................................24

# TABLE OF AUTHORITIES

**Federal Cases**                                                              **Page**

Adams v. Baker, 919 F. Supp. 1496 (D. Kan. 1996) .............................................. 21, 23, 24

American Medical Ass'n v. Weinberger, 522 F.2d 921 (7th Cir. 1975) ............................ 22

Autoskill, Inc. v. National Educ. Support Sys., Inc., 994 F.2d 1476
         (10th Cir. 1993) .................................................................................. 6

Baggett v. Bullitt, 377 U.S. 360 (1964) ........................................................... 9, 13

Beerheide v. Zavaras, 997 F. Supp. 1405 (D. Colo. 1998) ................................... 23

Bellotti v. Baird, 443 U.S. 622 (1979) ...................................................... passim

Carey v. Klutznick, 637 F.2d 834 (2nd Cir. 1980) ........................................... 24

Chalk v. United States District Court, 840 F.2d 701 (9th Cir. 1988) ................ 22

City of Akron v. Akron Center for Reproductive Health,
         462 U.S. 416 (1983) ....................................................................... 17

Colautti v. Franklin, 439 U.S. 379 (1979) .................................................. 9, 13

Doe v. Bellin Mem'l Hosp., 479 F.2d 756 (7th Cir. 1973) ............................... 22

Doe by Doe v. Shenandoah County Sch. Bd., 737 F. Supp. 913
         (W. D. Va. 1990) ............................................................................ 23

East High Sch. Prism Club v. Seidel, 95 F. Supp. 2d 1239 (D. Utah 2000) ..................... 24

Glick v. McKay, 937 F.2d 434 (9th Cir. 1991) ............................................... 19

Grayned v. City of Rockford, 408 U.S. 104 (1972) ................................... 7, 8, 13

H. L. v. Matheson, 450 U.S. 398 (1981) ........................................................ 18

Hodgson v. Minnesota, 497 U.S. 433, 435 (1990) ........................................ 14

Howard v. U.S., 864 F. Supp. 1019 (D. Colo. 1994) .................................... 24

Indiana Planned Parenthood v. Pearson, 716 F.2d 1127 (7th Cir. 1983) .......................... 19

Janklow v. Planned Parenthood, Sioux Falls Clinic, 517 U.S. 1174 (1996) ................... 19

ii

Jane L. v. Bangerter, 61 F.3d 1493 (10th Cir. 1995),
  rev'd and remanded on other grounds sub. nom., Leavitt v. Jane L.,
  518 U.S. 137 (1996). ................................................................ 7, 8, 13

Kansas Hosp. Ass'n v. Whiteman, 835 F. Supp. 1548 (D. Kan. 1993)................................ 6

Kikumura v. Hurley, 242 F.3d 950 (10th Cir. 2001) ........................................................ 21

Kolender v. Lawson, 461 U.S. 352 (1983) ........................................................................ 8

Lambert v. Wicklund, 520 U.S. 292 (1997) ............................................................... 15, 19

Lee v. McManus, 543 F. Supp. 386 (D. Kan. 1982)..................................................... 22, 23

Longstreth v. Maynard, 961 F.2d 895 (10th Cir. 1992)...................................................... 6

Lundgrin v. Claytor, 619 F.2d 61 (10th Cir. 1980)............................................................5

Martin-Marietta Corp. v. Bendix Corp., 690 F.2d 558 (6th Cir. 1982) ............................. 24

Mitel, Inc. v. Iqtel, Inc., 124 F.3d 1366 (10th Cir. 1997) ................................................... 6

Ohio v. Akron Center for Reproductive Health, 497 U.S. 502 (1990) ........................ 16, 17

Otero Sav. & Loan Ass'n v. Federal Reserve Bank of Kansas City,
  665 F.2d 275 (10th Cir. 1981) ................................................................................ 6

Planned Parenthood v. Casey, 505 U.S. 833 (1991)...............................................15, 18, 20

Papachristou v. City of Jacksonville, 405 U.S. 156 (1972) ................................................ 8

Planned Parenthood v. Citizens for Community Action, 558 F.2d 861
  (8th Cir. 1977) ....................................................................................................... 22

Planned Parenthood v. Owens, 107 F. Supp. 2d 1271 (D. Colo. 2000)............................. 21

Planned Parenthood, Sioux Falls Clinic v. Miller, 63 F.3d 1452
  (8th Cir. 1995), cert. denied, 517 U.S. 1174 (1996)........................................ 18, 19

Reinert v. Haas, 585 F. Supp. 477 (S.D. Iowa 1984).................................................... 24

Resolution Trust Corp. v. Cruce, 972 F.2d 1195 (10th Cir. 1992) ................................. 5, 6

Saint v. Nebraska Sch. Activities Ass'n, 684 F. Supp. 626 (D. Neb. 1988) ..................... 23

Savina Home Industries, Inc. v. Secretary of Labor, 594 F. 2d 1358
    (10th Cir. 1979) ................................................................ 10

Smith v. Goguen, 415 U.S. 566 (1974).................................................. 7, 8, 9

Stenberg v. Carhart, 530 U.S. 914 (2000)............................................ 13, 20

United States v. Marine Shale Processors, 81 F.3d 1329 (5th Cir.1996) ......... 24

Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489 ............ 8

Wilson v. Amoco Corp., 989 F. Supp. 1159 (D. Wyo. 1998) ........................ 24

Zbaraz v. Hartigan, 763 F.2d 1532 (7th Cir. 1985),
    aff'd by an equally divided court, 484 U.S. 171 (1987). ...................... 20

**State Cases**

Choate v. State, 232 P.2d 634 (Okla. 1951)........................................ 12

Freeman v. State Bd. of Medical Examiners, 154 P. 56 (Okla. 1916)............. 12

**State Statutes**

Okla. Stat. tit. 12, § 1397 ........................................................... 12

Okla. Stat. tit. 50, § 1 ..............................................................12, 13

Okla. Stat. tit. 59, § 503 ........................................................... 12

Okla. Stat. tit. 59, § 509(9).......................................................... 12

Okla. Stat. tit. 63, § 1-102 .......................................................... 2

Okla. Stat. tit. 63, § 1-730 .......................................................... 2

Okla. Stat. tit. 63, § 2601 .......................................................... 11

Okla. Stat. tit. 63, § 2602 .......................................................... 11

## I.    Introduction

In order to prevent an ongoing, irreparable harm, plaintiff seeks immediate relief against enforcement of a newly enacted Oklahoma law requiring "parental consent or knowledge" prior to the performance of an abortion on a minor.  Section 2 of HB 1727 ("the Act") imposes strict liability on abortion providers who perform an abortion on a "minor" without "parental consent or knowledge."  An abortion provider who runs afoul of the Act is exposed to the risks of financial liability, harassing lawsuits, and professional sanctions including possible loss of license, without any limitation based on fault or the quality of care provided.  Thus, the Act requires abortion providers to require parental consent before performing an abortion on a minor.

The Act exposes abortion providers to these risks and chills the provision of abortion services without even clearly describing what conduct the provider must undertake in order to avoid those risks.  Moreover, the Act fails to provide any of the basic protections that the United States Supreme Court has required of laws that impose parental consent or notice requirements.

The Act became effective immediately when signed by the Governor on June 4, 2001.  The Act is already chilling the provision of abortions to minors and is causing ongoing and irreparable harm to the young women of Oklahoma seeking abortions and to Oklahoma's abortion providers.  Therefore, this Court should issue immediate injunctive relief pending consideration of plaintiff's claims.

## II.    The Statute

Section 2 of HB 1727, to be codified in Title 63, Chapter 1, Article 7 of the Oklahoma Statutes, makes persons performing abortions upon minors strictly liable for

some medical expenses.  (A copy of the Act is attached to the Complaint as Exhibit A.)

HB 1727 became effective on June 4, 2001, when it was signed by the Governor, because

it provides that it "shall take effect and be in full force from and after its passage and

approval."  HB 1727, § 5.

   The Act penalizes an abortion provider who provides an abortion to any minor

"without parental consent or knowledge," by making the abortion provider strictly liable

for "any subsequent medical treatment such minor may require because of the abortion."

The Act does not contain any definition of its terms.  Some of the terms are defined in the

title and chapter in which HB 1727 will be codified.  "Person" is defined to mean, *inter

alia*, "any individual, corporation, firm, partnership, [or] association."  Okla. Stat. tit. 63,

§ 1-102.  "Abortion" is defined as "the purposeful termination of a human pregnancy, by

any persons with an intention other than to produce a live birth or remove a dead unborn

child. "  Okla. Stat. tit. 63, § 1-730.

   The Act does not include any exceptions for liability on the basis of the quality of

the care exercised by the abortion provider or on any other basis, thus imposing strict

liability.  This liability will be imposed for failing to obtain "parental consent or

knowledge," but the Act does not define this vague term, nor is it defined elsewhere in

Oklahoma statutory law.  Prior to passage of the Act, Oklahoma did not have a law that

required "parental consent or knowledge" before an abortion provider performed an

abortion on a minor.

## III.   Statement of Facts

   Last year, approximately 7,100 abortions were performed in Oklahoma.

(Declaration of Stanley Henshaw at ¶ 9.)  Approximately 8 percent of those abortions

were obtained by minors. (Id.)  Nova Health Systems, dba Reproductive Services, the

plaintiff in this case, provides abortions to minors.  (Declaration of Linda Meek at ¶ 5.)

Minors seeking abortions generally involve their parents in their decision.

(Henshaw Dec. at ¶ 20.)  Most of the minors who involve their parents do so voluntarily.

(Id.)  The younger the minor, the more likely it is that she will involve her parents in her

decision.  (Id. at ¶ 23.)  Minors seeking abortions at Reproductive Services fit this norm:

approximately 90 percent of the minors who seek abortions at Reproductive Services

come with a parent.  (Meek Dec. at ¶ 6.)  The rest of the minors who seek abortions at

Reproductive Services have talked to some other adult about their decision and are

accompanied by an adult when they come to the clinic. (Id.)

When minors do not involve a parent, they generally have compelling reasons for

not doing so and will go to great lengths to avoid parental involvement.  (Id. at ¶ 9;

Henshaw Dec. at ¶ 29.)  Minors will travel to a state without a parental involvement

requirement, carry an unwanted pregnancy to term, obtain an illegal abortion, or self-

induce an abortion.  (Henshaw Dec. at ¶ 29.)  Each of these alternatives poses a serious

threat to the minor's life and/or health.  Due to the language of the Act, minors who are

unwilling or unable to obtain "parental consent or knowledge" will be forced to choose

one of these alternatives. (Meek Dec. at ¶ 25; Henshaw Dec. at ¶ 29-30.)

The Act will delay the performance of abortions on minors who fear telling their

parents that they are seeking an abortion.  (Meek Dec. at ¶ 24-27; Henshaw Dec. at ¶¶ 17,

30.)  The fear may cause a minor to delay taking action for so long that she can no longer

legally obtain an abortion.  (Meek Dec. at ¶ 25; Henshaw Dec. at ¶ 13.)  Minors who

attempt to find ways to avoid parental involvement, such as traveling to a state without

any requirements, will also experience delays. (Meek Dec. at ¶ 26-27.)  Although

abortion is one of the safest surgical procedures, delay in the performance of abortion is associated with increased morbidity (risk of major complications) and mortality rates. (Meek Dec. at ¶ 15; Henshaw Dec. at ¶ 13-16.)

Given the risk of liability and exposure to harassing lawsuits resulting from passage of the Act, plaintiff now requires that all minors who seek abortion services from plaintiff be accompanied to the appointment by a parent who consents to the abortion, without exceptions even for minors who have been subject to parental abuse or neglect. (Meek Dec. at ¶ 20.)   Minors who are otherwise deemed capable of adult decision-making – such as emancipated minors, minors who are married or who have a dependent child – also must be accompanied by a consenting parent.  (Id. at ¶ 22.)  The in-person requirement, which plaintiff decided is the safest way to protect itself from the risk of liability and harassing suits, will create additional delays and obstacles for the minor.  (Id. at ¶ 23-24.)  Minors will be forced to delay obtaining abortions until a parent, rather than some other relative or responsible adult, is able to accompany them to the clinic.  (Id. at ¶ 23.)  Minors who are unwilling or unable to inform their parents, much less obtain consent, will suffer harms as discussed above, as will minors whose parents are not available due to death or loss of custody. (Id. at ¶ 25.)

The Act will also harm abortion providers.  Under the terms of the Act, providers will be at risk of liability "for the cost of any subsequent medical treatment such minor might require because of the abortion," without regard to fault, if they provide abortions without requiring "parental consent or knowledge." (Id. at ¶ 12-13.)  The law does not provide any limitations on liability, based on good faith beliefs of abortion providers, use of professional judgment, adherence to standards of care, or any other standard.  (Id. at ¶13-14.)

The Act will also expose abortion providers to harassment suits.  (Id. at ¶ 15.)
Providers may be named in a lawsuit by any number of people or entities, including the
minor, her parents, insurance companies, other doctors, hospitals or medical clinics or
government agencies seeking reimbursement for medical treatment.  A lawsuit might be
filed immediately after the minor obtains the abortion or after many years have passed.
(Id. at ¶ 15.)

The possibility of harassment suits is not merely a theoretical possibility.
Oklahoma providers have been harassed by anti-abortion protesters who specifically
encourage former abortion patients to take steps against the providers.  (Id. at ¶ 17-18.)
In addition, plaintiff and providers have been subject to regular protests and intimidation,
as well as violent attacks.  (Id. at ¶ 16-18.)

The Act may force providers in Oklahoma to stop performing abortions on minors
altogether, which would be the only way they could completely avoid the potential of
unlimited strict liability.  (Id. at ¶ 29.)  If Oklahoma providers stop offering abortion
services to young women, the health and safety of Oklahoma minors will be put in
jeopardy.  (Id.)

**IV.     Argument**

The primary function of a preliminary injunction is to maintain the status quo
pending a final determination of the parties' rights.  Resolution Trust Corp. v. Cruce, 972
F.2d 1195, 1198 (10th Cir. 1992) (citing Lundgrin v. Claytor, 619 F.2d 61, 63 (10th Cir.
1980)).  The Tenth Circuit has adopted a four-part standard that a party seeking a
preliminary injunction must meet.  Under this standard, a plaintiff must establish that:

> (1) it has a substantial likelihood of prevailing on the merits, (2) it will
> suffer irreparable injury unless the injunction issues, (3) its threatened

injury outweighs the injury caused the defendant by the injunction, and (4) an injunction would not be adverse to the public interest.

Mitel, Inc. v. Iqtel, Inc. 124 F.3d 1366, 1370 (10th Cir. 1997); accord Resolution Trust Corp., 972 F.2d at 1198-99. The same standard applies to the issuance of temporary restraining orders. See, e.g., Kansas Hosp. Ass'n v. Whiteman, 835 F. Supp. 1548, 1551 (D. Kan. 1993). As demonstrated below, plaintiff clearly meets each of these four requirements and, therefore, is entitled to a preliminary injunction blocking enforcement of the Act.

### A.    Plaintiff Has a Substantial Likelihood of Prevailing on the Merits.

In order to demonstrate a reasonable likelihood of success on the merits, a party need only establish "a prima facie case showing a reasonable probability that it will ultimately be entitled to the relief sought." Autoskill, Inc. v. National Educ. Support Sys., Inc., 994 F.2d 1476, 1487 (10th Cir. 1993) (quoting Continental Oil Co. v. Frontier Ref. Co., 338 F.2d 780, 781 (10th Cir. 1964)).

In addition, the Tenth Circuit has a "liberal definition" of reasonable likelihood of success on the merits when the other three factors necessary for a preliminary injunction are met. Id. According to this standard, "'it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation.'" Id. (quoting Otero Sav. & Loan Ass'n v. Federal Reserve Bank of Kansas City, 665 F.2d 275, 278 (10th Cir. 1981)); see also Longstreth v. Maynard, 961 F.2d 895, 903 (10th Cir. 1992).

At this stage of the proceedings, plaintiff seeks injunctive relief based on its claims that the Act violates the right to privacy of plaintiff's minor patients by placing

- 6 -

substantial obstacles in the path of minor women seeking abortions, and that it violates plaintiff's right to due process of law due to vagueness.  Given the clear Supreme Court precedent prohibiting vague laws that affect the exercise of constitutional rights and establishing the substantive and procedural requirements for the imposition of a parental consent or notice requirement for the provision of abortions to minors, plaintiff has clearly shown a reasonable probability that it will be entitled ultimately to the relief it seeks.  Moreover, for the reasons discussed below, plaintiff meets the other three factors for injunctive relief and plaintiff has raised serious, substantial questions about the constitutionality of the Act that make the Act fair ground for litigation.

### 1.    The Act is Unconstitutionally Vague.

The Fourteenth Amendment's guarantee of due process prohibits laws so vague that persons "of common intelligence must necessarily guess at [their] meaning and differ as to [their] application." Smith v. Goguen, 415 U.S. 566, 572 n.8 (1974) (quoting Connally v. General Constr. Co., 269 U.S. 385, 391 (1926)).  "It is a fundamental component of due process that a law is void-for-vagueness if its prohibitions are not clearly defined." Grayned v. City of Rockford, 408 U.S. 104, 108 (1972); accord Jane L. v. Bangerter, 61 F.3d 1493, 1500 (10th Cir. 1995), rev'd and remanded on other grounds sub. nom. Leavitt v. Jane L., 518 U.S. 137 (1996).

Vague laws offend due process in two ways.  First, they fail to provide the persons targeted by the statute with a "reasonable opportunity to know what is prohibited, so that [they] may act accordingly." Grayned, 408 U.S. at 108; Jane L., 61 F.3d at 1500

- 7

(abortion restriction prohibiting "experimentation" on "live unborn children" void for vagueness).

Second, by failing to provide explicit standards by which to assess conduct, vague laws "impermissibly delegate[] basic policy matters . . . for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory enforcement." Grayned, 408 U.S. at 108-09; see also Jane L., 61 F.3d at 1500 (abortion restriction which "fail[s] to draw a clear line between proscribed and permitted conduct" is unconstitutionally vague). In other words, by failing to define explicitly what conduct is proscribed, vague laws invite arbitrary and discriminatory enforcement. Kolender v. Lawson, 461 U.S. 352, 357 (1983); Papachristou v. City of Jacksonville, 405 U.S. 156, 170 (1972).

"[T]he degree of vagueness that the Constitution tolerates . . . depends in part on the nature of the enactment." Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 498 (1982). Statutes that impose criminal penalties are subjected to a higher standard of certainty in their language than is applicable to other statutes. See, e.g., Kolender, 461 U.S. at 357; Goguen, 415 U.S. at 574-75. Statutes that are "quasi-criminal" in nature warrant a relatively strict test, due to their prohibitory and stigmatizing effect.[1] See Village of Hoffman, 455 U.S. at 499.

The Constitution demands the greatest clarity from a statute where, as here, "the uncertainty induced by the statute threatens to inhibit the exercise of constitutionally

---

[1] As the Tenth Circuit has noted, the United States Supreme Court has sometimes labeled laws that provide the following types of civil punishment as "quasi-criminal": "civil money penalties, forfeitures of property, and the punitive imposition of various disabilities, such as the loss of professional license or public employment." Savina Home Industries, Inc. v. Secretary of Labor, 594 F. 2d 1358, 1362 n.6 (10th Cir. 1979).

protected rights." <u>Colautti v. Franklin</u>, 439 U.S. 379, 391 (1979) (citations omitted); <u>see also</u> <u>Baggett v. Bullitt</u>, 377 U.S. 360, 372 (1964) ("the vice of constitutional vagueness is further aggravated" where the statute inhibits the exercise of constitutionally protected freedoms). Vague standards of proscribed conduct, coupled with the prospect of arbitrary enforcement, will in many instances cause persons to "'steer far wider of the unlawful zone' . . . than if the boundaries of the forbidden areas were clearly marked." <u>Baggett</u>, 377 U.S. at 372 (quoting <u>Speiser v. Randall</u>, 357 U.S. 513, 526 (1958)). This consequence raises special concerns where the vague statute encroaches upon constitutional rights.

In addition, preventing arbitrary and discriminatory enforcement of a law is particularly important where the law relates to a matter as to which there are deep divisions in society. That some persons will be politically or philosophically motivated to enforce unclear laws in a capricious fashion is an unfortunate but foreseeable fact. <u>Cf.</u> <u>Goguen</u>, 415 U.S. at 575 (striking down statute forbidding "contemptuous" treatment of flag because "[s]tatutory language of such a standardless sweep allows policemen, prosecutors, and juries to pursue their personal predilections").

The meaning of the Act is unclear in several ways, thus rendering it unconstitutionally vague. First, the meaning of the term "parental consent" is unclear. The statute provides no indication whether the consent of one or both parents is required in order for an abortion provider to avoid liability under the Act, nor does it establish what proof, if any, of such consent or of "parental . . . knowledge" the plaintiff must obtain to insulate itself form liability under the Act.

Second, the meaning of the term "parental consent or knowledge" is unclear, as the Act does not specify what the parent(s) must know.  For example, is it sufficient that a parent know that the minor plans to seek an abortion, or must the parent know that the minor is obtaining an abortion, or must the parent know that the minor is obtaining an abortion from a specific abortion provider?

Third, the use of the phrase "parental consent or knowledge" makes the level of required parental involvement unclear.  It is unclear whether "parental . . . knowledge" in the absence of parental consent would be sufficient to preclude liability, as such an interpretation makes the inclusion of the term "parental consent" superfluous.  Moreover, it is unclear whether "parental . . . knowledge" would be sufficient if a parent(s) explicitly refused to consent to the performance of the abortion, or if one parent consented and the other did not.

Fourth, the costs for which an abortion provider may be liable are uncertain under the Act.  The meaning of the phrase "any subsequent medical treatment such minor might require because of the abortion" is unclear.  Is that limited to post-operative care required due to physical complications arising from the performance of the abortion?  Does it encompass counseling a woman might seek even years later after having had an abortion?  What standard is used to determine if the "subsequent medical treatment" is "required"?  Does the woman's subjective opinion as to whether she "requires" treatment control or must she establish through medical experts that the treatment was "required" according to some medical standard?

Fifth, the term "minor" as used in the Act is vague.  Chapter 1 of title 63 does not contain a definition of "minor."  The term is defined in Chapter 54, dealing with Health

Services for Minors, as "any person under the age of eighteen (18) years of age, except such person who is on active duty with or has served in any branch of the Armed Services of the United States shall be considered an adult." Okla. Stat. tit. 63, § 2601. It is not clear whether that definition of "minor" applies to the Act's provision. Moreover, it is not clear whether minors who are authorized by statute to self-consent to medical care -- which includes married minors, minors with dependent children, and emancipated minors, see Okla. Stat. tit. 63, § 2602 -- are "minors" as that term is used in the Act.

Sixth, the Act is vague because it does not specify what the abortion provider must do to insulate itself from liability under the Act. For example, it does not specify any steps the provider should take to confirm or document the identity of the parent or the existence of "parental consent or knowledge."

Thus, it is unclear what an abortion provider must do in order to perform an abortion on a minor without the risk of liability under the Act. If an abortion provider guesses wrongly as to the meaning of these terms, he or she will be exposed to the risk of unlimited, strict civil liability, without any specified standards by which to judge his or her conduct and without regard to fault or the degree of care or professional skill exercised in performing the abortion. Abortion providers who perform abortions on minors will be at risk of being sued for money damages whenever a minor, a parent, a health care provider, or the payer of medical claims -- whether the Medicaid program, a health maintenance organization, or an insurance company -- wants to claim that the minor received "subsequent medical treatment" that was "require[d] because of the abortion." Given the controversy surrounding abortion in this country, the risk of such suits, irrespective of merit, is high.

- 11 -

Also high is the risk of being sanctioned by the Oklahoma Board of Medical Licensure and Supervision for the performance of "unprofessional conduct." "Unprofessional conduct" is defined as including "[d]ishonorable or immoral conduct which is likely to deceive, defraud, or harm the public." Okla. Stat. tit. 59, § 509(9). The restrictions on "unprofessional conduct" by physicians are not meant to be evaluated just from the viewpoint of the medical fraternity, but also from the view of laymen. See Choate v. State, 232 P.2d 634, 635 (Okla. 1951) (construing provision restricting advertising of medical business); Freeman v. State Bd. of Medical Examiners, 154 P. 56, 58 (Okla. 1916) (construing provision prohibiting obtaining fee on assurance incurable disease can be permanently cured). By enacting a statute imposing the penalty of strict liability on abortion providers if they fail to obtain "parental consent or knowledge" before performing an abortion on a minor, the State Legislature and Governor have established that the State believes that the public is harmed if abortions are provided to minors without "parental consent or knowledge" and that such provision is "dishonorable or immoral conduct." The Oklahoma Board of Medical Licensure and Supervision is empowered to suspend, revoke or order other sanctions against the license of any licensed physician for "unprofessional conduct." Okla. Stat. tit. 59, § 503. Given the type of penalties that can be imposed on a physician who performs an abortion on a minor without "parental consent or knowledge," the Act can be characterized as "quasi-criminal."

Furthermore, the Act exposes abortion providers to injunctive suits brought in the name of the State to enjoin the maintaining of a nuisance. See Okla. Stat. tit. 12, § 1397; id., tit. 50, § 1. "Nuisance" is defined to include "omitting to perform a duty, which . . .

omission . . . annoys, injures or endangers the comfort, repose, health, or safety of others." Okla. Stat. tit. 50, § 1. By enacting a statute imposing the penalty of strict liability on abortion providers if they fail to obtain "parental consent or knowledge" before performing an abortion on a minor, the State Legislature and Governor have indicated that the State believes that some harm may result if abortion providers perform abortions on minors without such "consent or knowledge." Accordingly, abortion providers face the risk of injunctive suits brought by the Attorney General to prevent them from providing abortions to minors without "parental consent or knowledge."

    This type of uncertainty will inevitable cause physicians to "'steer far wider of the unlawful zone' . . . than if the boundaries of the forbidden areas were clearly marked.'" See Grayned, 408 U.S. at 109 (quoting Baggett, 377 U.S. at 372). Providers will fear providing abortions to minors unless the consent of at least one and maybe both parents is obtained. Providers will fear providing an abortion to any minor who has a legal guardian but no parent. Thus, the vagueness in the Act threatens to chill the exercise of the right to choose. See Colautti, 439 U.S. at 391. If this Court upholds the Act, abortion providers will be forced to either cease providing abortions to many minors or face the risk of strict civil liability, harassing lawsuits, and professional sanctions possibly including loss of the license to practice medicine.[2]

---

[2] This Court should not attempt to save the Act's constitutionality by supplying terms and definitions that the Act itself does not contain. As the Supreme Court recently reiterated in Stenberg v. Carhart, 530 U.S. 914 (2000), federal courts cannot adopt "a narrowing construction of a state statute unless such a construction is reasonable and readily apparent." 530 U.S. at 944 (internal citations omitted). The Act is not "genuinely susceptible" to a narrowing construction and should be struck. See id; see also Jane L., 61 F.3d at 1501 (finding that district court improperly used its power by "graft[ing] its own meaning onto the statute's language").

### 2.   The Act Imposes an Undue Burden on Young Women.

Minors have a right to privacy under the United States Constitution that encompasses the right to seek an abortion.  See, e.g., Hodgson v. Minnesota, 497 U.S. 433, 435 (1990).  Although the State may place greater limits on a minor's ability to exercise that right than it could on an adult's, the State may not unduly burden a minor's exercise of that right without violating the federal constitution.  See, e.g., Bellotti v. Baird, 443 U.S. 622, 640 (1979) (plurality opinion) ("Bellotti II").  As the Supreme Court has stated, "[t]he need to preserve the constitutional right [to seek an abortion] and the unique nature of the abortion decision, especially when made by a minor, require a State to act with particular sensitivity when it legislates to foster parental involvement in this matter." Bellotti II, 443 U.S. at 642.

In enacting Section 2 of HB 1727, the State failed to show any sensitivity to the rights of minors to seek an abortion.  Rather, by making abortion providers strictly liable for costs of subsequent medical treatment claimed to be "require[d]" by a minor "because of the abortion," unless there is "parental consent or knowledge," the State has imposed a requirement for parental consent, or at a minimum, parental notice.  The State has imposed that requirement on all minors, even those who are emancipated, mature, sexually or physically abused by family members, pregnant due to rape or incest, or in need of an abortion without delay to preserve their health or life.

By imposing this universal, standardless requirement for "parental consent or knowledge," the Act unduly burdens minors' right to seek an abortion in at least two ways: (1) it fails to provide any mechanism by which a mature minor or one for whom an abortion would be in her best interest may obtain an abortion without parental consent or

knowledge; and (2) it fails to provide any exception for situations in which an abortion is

needed without delay to preserve the health or life of the minor.

> **a.  The Act Violates the Privacy Rights of Minors Seeking
> Abortions by Imposing a Parental Involvement
> Requirement Without Providing Any Mechanism by
> Which a Minor May Obtain an Abortion Without Parental
> Consent or Knowledge if She is Mature or if the Abortion
> Would be in Her Best Interests.**

A state may not "lawfully authorize an absolute parental veto over the decision of

a minor to terminate her pregnancy." Bellotti II, 443 U.S. at 639 (citing Planned

Parenthood of Central Missouri v. Danforth, 428 U.S. 52, 74 (1976)).  Where a state

imposes a requirement that one or both parents consent before an abortion is performed

on a minor, the state "also must provide an alternative procedure whereby authorization

for the abortion can be obtained."  Bellotti II, 443 U.S. at 643 (footnote omitted); accord,

e.g., Lambert v. Wicklund, 520 U.S. 292, 295 (1997) (reaffirming requirements for

bypass articulated in Bellotti II); Planned Parenthood v. Casey, 505 U.S. 833, 899 (1991).

Such an alternative procedure is constitutionally required in the abortion context,

but not in many other situations in which parental consent is required, because of the

unique nature of the abortion decision.  As the Supreme Court has explained,

> The pregnant minor's options are much different from those facing a
> minor in other situations, such as deciding whether to marry. . . .  A
> pregnant adolescent . . . cannot preserve for long the possibility of
> aborting, which effectively expires in a matter of weeks from the onset of
> pregnancy.

> Moreover, the potentially severe detriment facing a pregnant woman is not
> mitigated by her minority.  . . .  In sum, there are few situations in which
> denying a minor the right to make an important decision will have
> consequences so grave and indelible.

Bellotti II, 443 U.S. at 642 (citation omitted).

- 15

The constitutionally required alternative procedure must satisfy four criteria. First, the minor must have the opportunity to obtain court authorization for the abortion if she shows that "she is mature enough and well enough informed to make her abortion decision, in consultation with her physician, independently of her parents' wishes." Id. at 643; see also Ohio v. Akron Center for Reproductive Health, 497 U.S. 502, 511 (1990) ("Akron II"). Second, the minor must have the opportunity to obtain court authorization "even if she is not able to make this decision independently, [if] the desired abortion would be in her best interests." Bellotti II, 443 U.S. at 644; Akron II, 497 U.S. at 511. Third, "the procedure must insure the minor's anonymity." Akron II, 497 U.S. at 512; Bellotti II, 443 U.S. at 644. Fourth, the "bypass procedure [must be conducted] with expedition to allow the minor an effective opportunity to obtain the abortion." Akron II, 497 U.S. at 513; Bellotti II, 443 U.S. at 644. The Act at issue here fails to provide for any judicial bypass procedure, much less one that meets these requirements. Therefore, because the Act imposes a parental consent requirement, the Act is unconstitutional.

Here, given the risk of unlimited strict liability and the lack of clarity in the Act, abortion providers reasonably interpret the Act as imposing just such a requirement. Plaintiff has instituted a new policy as a result of the Act and now requires that all minors seeking abortions have the consent of a parent and be accompanied by a parent to the clinic. See Statement of Facts, supra. This requirement is being imposed even on minors who are emancipated or abused. Id. Moreover, due to the lack of clarity in the Act and the lack of standards even as to what process an abortion provider should use to verify or document "parental consent or knowledge," the burdens imposed by the Act are compounded.

Given the ambiguous requirement for "parental consent or knowledge," plaintiff does not believe that it can avoid the risk of strict liability under the Act if it merely notifies the minor's parents before performing an abortion on a minor.  However, even if notification would be sufficient under the Act, the Act would still impose an undue burden on minors seeking abortions.

The Supreme Court has not directly addressed whether a statute requiring notice to one parent must contain a judicial bypass mechanism, or whether the Bellotti II standards must be applied to determine the adequacy of a bypass mechanism in such a statute.  In Akron II, the Court wrote:

> [W]e note that, although our cases have required bypass procedures for parental consent statutes, we have not decided whether parental notice statutes must contain such procedures. . . .  We leave the question open . . .

497 U.S. at 510 (noting that statute at issue contained bypass procedure which met Bellotti requirements) (citation omitted).  However, Justice Stevens, concurring in the judgment, made the following observation:

> The Court correctly states that we have not decided the specific question whether a judicial bypass procedure is necessary in order to save the constitutionality of a one-parent notice statute. . . .  We have, however, squarely held that a requirement of preabortion parental notice in all cases involving pregnant minors is unconstitutional.  *Although it need not take the form of a judicial bypass, the State must provide an adequate mechanism for cases in which the minor is mature or notice would not be in her best interests.*

Id. at 522 (Stevens, J., concurring in part and concurring in the judgment) (emphasis added) (relying primarily on City of Akron v. Akron Center for Reproductive Health, 462 U.S. 416 (1983)).  The Act here lacks *any* alternative mechanism for mature or best-interest minors.

- 17 -

Moreover, pronouncements by the Supreme Court in both Bellotti II and Casey indicate that, if directly faced with the issue, the Court would require that a parental notice statute, like a parental consent statute, contain an adequate judicial bypass. See Casey, 505 U.S. at 897 (invalidating a preabortion husband notification requirement for married women in part because such a notification requirement "will often be tantamount to the veto found unconstitutional in Danforth"); Bellotti II, 443 U.S. at 647 ("We conclude, therefore, that under state regulation such as that undertaken by Massachusetts, every minor must have the opportunity -- if she so desires -- to go directly to a court without first consulting or notifying her parents.").

Although the Supreme Court has not directly stated that a judicial bypass mechanism must be provided if parental notification is required, neither it nor any federal court of appeal has ever upheld a notice statute that applied to mature minors and did not contain a bypass mechanism. Cf. H. L. v. Matheson, 450 U.S. 398, 407 (1981) (upholding parental notice law that lacked bypass as applied to unemancipated, immature, dependent minors). Several lower federal court decisions have directly held that a parental notice statute, like a parental consent statute, must contain an expeditious and confidential bypass mechanism, and others have held that, if a parental notice statute does contain a bypass, the bypass mechanism must satisfy the constitutional requirements imposed on parental consent bypass mechanisms.

For example, the United States Court of Appeals for the Eighth Circuit held that "parental-notice provisions, like parental-consent provisions, are unconstitutional without a Bellotti-type bypass." Planned Parenthood, Sioux Falls Clinic v. Miller, 63 F.3d 1452,

1460 (8th Cir. 1995), <u>cert. denied</u>, 517 U.S. 1174 (1996);[3] <u>accord</u> <u>Glick v. McKay</u>, 937

F.2d 434, 442 (9th Cir. 1991).[4]  As the Eighth Circuit Court recognized, "[n]otifying the

parent of the daughter's intentions . . . before the abortion can be performed gives the

parent the opportunity to obstruct the daughter's choice, just as requiring consent gives

parents the tools with which to do so." <u>Miller</u>, 63 F.3d at 1459.  The <u>Miller</u> court

reasoned that a bypass is necessary for a parental notice statute because mature minors

have a constitutional right to obtain an abortion without notifying a parent.  "The State

runs afoul of the Constitution when it attempts to [mandate notice] to parents of mature

daughters capable of making their own informed choices." <u>Id.</u> at 1460.  Indeed, for

mature minors, "the State has no legitimate reason for imposing a restriction on their

liberty interests that it could not impose on adult women." <u>Id.</u>

     Further, several cases decided before <u>Akron II</u> hold that parental notice statutes

must contain a bypass that would be required for a parental consent statute.  In <u>Indiana</u>

<u>Planned Parenthood v. Pearson</u>, 716 F.2d 1127 (7th Cir. 1983), the court construed

Supreme Court precedent to require "that states provide bypass procedures in connection

with both consent and notification statutes." <u>Id.</u> at 1132 (finding Indiana parental notice

statute unconstitutional).  The <u>Pearson</u> court held that "the [Supreme] Court has made no

suggestion that procedures insufficient for consent statutes would be sufficient for

---

[3] The Supreme Court declined to grant the petition for a writ of certiorari in that case.
<u>See</u> <u>Janklow v. Planned Parenthood, Sioux Falls Clinic</u>, 517 U.S. 1174 (1996).  Three
justices dissented from the denial, questioning the Eighth Circuit's decision that a
parental notice statute is unconstitutional without a judicial bypass.  517 U.S. at 1176.

[4] Although the Supreme Court overruled portions of the <u>Glick</u> opinion in <u>Lambert v.</u>
<u>Wicklund</u>, 520 U.S. 292 (1997), the Court's ruling in <u>Lambert</u> does not reject <u>Glick</u>'s
application of the <u>Bellotti</u> standards to a parental notice bypass mechanism.  <u>See</u>
<u>Lambert</u>, 520 U.S. at 297.

notification statutes," id., and thus applied the Court's standards for bypass mechanisms for consent statutes to an Indiana parental notice statute. See also Zbaraz v. Hartigan, 763 F.2d 1532, 1539 (7th Cir. 1985), aff'd by an equally divided court, 484 U.S. 171 (1987). Thus, even if the Act is construed to be satisfied by parental notification without parental consent, the Act is unconstitutional due to its failure to include any bypass mechanism.

**b.** **The Act Violates the Privacy Rights of Minors Seeking Abortions by Imposing a Parental Involvement Requirement Without Providing Any Medical Emergency Exception.**

The Act also violates minors' privacy rights because it imposes its requirement for "parental consent or knowledge" without any medical emergency exception. The Supreme Court has consistently held that restrictions on the provision of abortions must include an exception for situations in which the woman's health and/or life will be placed at risk. See, e.g., Stenberg v. Carhart, 530 U.S. 914, 921 (2000); Casey, 505 U.S. at 879.

Where the Supreme Court has upheld a parental consent or notice statute, the statute has contained some exception for emergency situations in which the minor's health would be placed at risk if the procedure is delayed while consent is obtained or notice is provided. See, e.g., Casey, 505 U.S. at 879 (parental consent required "[e]xcept in a medical emergency");[5] Bellotti II, 443 U.S. at 646 (parental consent required only for a "nonemergency abortion").

---

[5] The Pennsylvania parental consent statute defined "medical emergency" as "[t]hat condition which, on the basis of the physician's good faith clinical judgment, so complicates the medical condition of a pregnant woman as to necessitate the immediate abortion of her pregnancy to avert her death or for which a delay will create serious risk of substantial and irreversible impairment of a major bodily function." Casey, 505 U.S. at 879 (quoting 18 Pa. Cons. Stat. § 3203 (1990)).

Recently, the United States District Court for the District of Colorado found a parental notice law in Colorado facially unconstitutional due to its failure to include an exception permitting physicians to perform abortions without notice where needed to protect the health or life of the pregnant minor. <u>Planned Parenthood v. Owens</u>, 107 F. Supp. 2d 1271 (D. Colo. 2000). As that court found, Supreme Court decisions have made it clear that "an abortion regulation that puts a woman's health in jeopardy, regardless of her age or maturity, is unconstitutional." <u>Id.</u> at 1281.

Here, the Act does not absolve the abortion provider from exposure if he performs an abortion without "parental consent or knowledge," even where delay in providing the abortion will put the minor's health at risk. Without an adequate exception for medical emergency situations, the Act violates the right to privacy of minor women.

**B.     Plaintiff Will Suffer Immediate and Irreparable Harm Unless This Court Grants a Temporary Restraining Order or a Preliminary Injunction.**

Absent immediate injunctive relief, plaintiff and its patients will suffer irreparable harm in two respects. First, plaintiff's patients will be unable to obtain necessary medical care. Second, the constitutional rights of plaintiff and its patients will be violated, which is *per se* irreparable harm.

It is well established that when a case involves an alleged deprivation of constitutional rights, no further showing of irreparable injury is necessary. <u>See</u>, <u>e.g.</u>, <u>Kikumura v. Hurley</u>, 242 F.3d 950, 963 (10th Cir. 2001) (alleged violation of First and Fifth Amendment rights); <u>Adams v. Baker</u>, 919 F. Supp. 1496, 1505 (D. Kan. 1996) (alleged violation of Fourteenth Amendment rights). Interference with the exercise of constitutional rights of patients and their providers also supports a finding of irreparable

- 21 -

injury.  See Planned Parenthood v. Citizens for Community Action, 558 F.2d 861, 867

(8th Cir. 1977) (finding that a statute that interfered with the "exercise of [Planned

Parenthood's] constitutional rights and the rights of its patients supports a finding of

irreparable injury); accord American Medical Ass'n v. Weinberger, 522 F.2d 921, 925-26

(7th Cir. 1975); Doe v. Bellin Mem'l Hosp., 479 F.2d 756, 759 (7th Cir. 1973) (opinion

per Stevens, J.).  As discussed in Section IV.A, *supra*, the Act will interfere with the

exercise of constitutional rights absent the injunctive relief sought by plaintiff.

     In addition, the Act poses the risk of harming the health minor women, as

discussed in Section IV.A.2, *supra.*  Those types of harm are clearly irreparable.  See,

e.g., Chalk v. United States District Court, 840 F.2d 701, 710 (9th Cir. 1988) (emotional

and psychological injury constitutes irreparable harm); Weinberger, 522 F.2d at 925-26

(irreparable harm exists where regulations undermine patient confidence in physicians

and prevent physicians from treating patients effectively); Lee v. McManus, 543 F. Supp.

386, 392 (D. Kan. 1982) (unnecessary discomfort and anxiety as well as possible pain

and life-threatening complications constitute irreparable harm).

### C.     The Threatened Injury to the Plaintiff Outweighs Any Injury to the Defendants.

     The injury to defendants from issuance of an injunction, if any, is minimal.

Indeed, government officials are benefited if an unconstitutional statute is enjoined for

the same reason that the public interest is served by enjoining a statute likely to infringe

constitutional rights.  See Section IV.D, *infra.*  Moreover, the defendants will not be

harmed by waiting to enforce the Act until this Court has ruled on its constitutionality.

There is no administrative burden on the defendants from maintaining the status quo.  Cf.

- 22 -

<u>Lee</u>, 543 F. Supp. at 392 ("Certainly, the threat of irreparable physical harm to plaintiff is not outweighed by the risk of financial burden or administrative inconvenience to defendants.").

An injunction here will place absolutely no affirmative obligation on the defendants. <u>See</u> <u>Saint v. Nebraska Sch. Activities Ass'n</u>, 684 F. Supp. 626, 628 (D. Neb. 1988) (finding that the "balance of equities tips greatly in favor of the plaintiff" because defendants will "suffer no discernible harm" if the sole harm alleged is that they will lose their ability to enforce rules); <u>see also</u> <u>Beerheide v. Zavaras</u>, 997 F. Supp. 1405, 1410-11 (D. Colo. 1998) (finding balance in favor of plaintiffs where injunction will have a *de minimis* impact on defendants); <u>Doe by Doe v. Shenandoah County Sch. Bd.</u>, 737 F. Supp. 913, 916-17 (W. D. Va. 1990) (finding "minimal" harm to defendants where injunction would only require providing "oral instructions to others and making sure that the instructions are followed" but required "no change in the defendants' operations and no expenditure" of financial resources).

Therefore, the balance of harms favors the plaintiff: the plaintiff and its patients will be deprived of their constitutional rights and some of plaintiff's patients may suffer medical harm, whereas the defendants will merely be delayed in enforcing the Act if it ultimately withstands judicial scrutiny. Thus, the irreparable injury to the plaintiff and its patients clearly outweighs any harm to the defendants.

**D.     An Injunction Would Not Be Adverse to the Public Interest**

It is a well-established principle that the public interest is served in granting an injunction that prevents violations of constitutional rights. <u>See e.g.</u>, <u>Saint</u>, 684 F. Supp. at 630; <u>Adams</u>, 919 F. Supp. at 1505. "[T]he public interest . . . requires obedience to the

- 23 -

Constitution . . . ." <u>Carey v. Klutznick</u>, 637 F.2d 834, 839 (2d Cir. 1980); <u>see</u> <u>also</u> <u>East High Sch. Prism Club v. Seidel</u>, 95 F. Supp. 2d 1239, 1251 (D. Utah 2000) ("[A]ssuming the Plaintiffs' [constitutional] rights are violated[,]" the public interest is harmed if an injunction is not granted); <u>Adams</u>, 919 F. Supp. at 1505 ("The public interest would be best served by enjoining the defendants from infringing on the plaintiff's right to equal protection"); <u>Howard v. U.S.</u>, 864 F. Supp. 1019, 1029 (D. Colo. 1994) ("Enforcement of [fundamental constitutional] rights is clearly very much in the public interest.").

The public has no interest in effectuating an unconstitutional statute. <u>See</u>, <u>e.g.</u>, <u>Martin-Marietta Corp. v. Bendix Corp.</u>, 690 F.2d 558, 568 (6th Cir. 1982). Indeed, the public "is always well served by protecting the constitutional rights of all its members." <u>Reinert v. Haas</u>, 585 F. Supp. 477, 481 (S.D. Iowa 1984).

The constitutional rights of plaintiff's minor patients to an abortion are threatened by enforcement of the Act, and the only way to guarantee that minor women in Oklahoma will not be denied their constitutionally protected rights is by issuance of an injunction. Moreover, there is also an important public interest in protecting public health and issuance of this injunction could prevent serious health risks to those Oklahoma minors in need of immediate abortions to prevent serious injury to their health or life. <u>Cf.</u> <u>Wilson v. Amoco Corp.</u>, 989 F. Supp. 1159, 1171 (D. Wyo. 1998) (noting "'extraordinary weight courts of equity place upon the public interests in a suit involving more than a mere private dispute.'") (quoting <u>United States v. Marine Shale Processors</u>, 81 F.3d 1329, 1359 (5th Cir.1996)).

## V.     Conclusion

For all the foregoing reasons, plaintiff respectfully asks this Court to grant its

motions for a temporary restraining order and a preliminary injunction.

Dated: June 8, 2001                              Respectfully submitted,


     Bebe J. Anderson*                        M. M. Hardwick, OBA #3847
     The Center for Reproductive              P.O. Box 35975
        Law & Policy                     Tulsa, OK  74153
     120 Wall Street, 14th Floor             Tulsa, OK 74135
     New York, NY 10005                      (918) 749-3313
     (917) 637-3600                          (f) (918) 742-1819
     (f) (917) 637-3666

Counsel for Plaintiff

*Application for admission *pro hac vice* being filed.

- 25