

ORIGINAL

IN UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

F I L E D

FEB 2 7 2002

Phil Lombardi, Clerk
U.S. DISTRICT COURT

|  | X |  |
|---|---|---|
| NOVA HEALTH SYSTEMS, DBA REPRODUCTIVE SERVICES, on behalf of itself, its staff and its patients, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | Civil Case No. 01-CV-419 EA (X) |
| | : | |
| MIKE FOGARTY, in his Official Capacity as Chief Executive Officer of the Oklahoma Health Care Authority, *et al.* | : | |
| | : | |
| Defendants. | : | |
| | X | |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS

## MOTION FOR SUMMARY JUDGMENT

Bebe J. Anderson*
Jody Ratner*
The Center for Reproductive
    Law & Policy
120 Wall Street, 14th Floor
New York, NY 10005
(917) 637-3600
(f) (917) 637-3666

M. M. Hardwick, OBA #3847
P.O. Box 35975
Tulsa, OK 74153
(918) 749-3313
 (f) (918) 742-1819

Counsel for Plaintiff

*Application for admission *pro hac vice* granted.





## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................... ii

I.     INTRODUCTION ................................................................................. 1

II.    STATEMENT OF MATERIAL FACTS AS TO WHICH NO GENUINE ISSUE
      EXISTS .................................................................................................. 1

III.   THE STATUTORY FRAMEWORK ..................................................... 4

IV.   ARGUMENT ........................................................................................ 6

      A.     Summary Judgment Standard ....................................................... 6

      B.     The Act Violates Young Women's Right to Privacy................... 6

           1.     The Act Fails to Provide a Judicial Bypass Mechanism by Which a
               Minor May Obtain Authorization for an Abortion Without Parental
               Consent. ............................................................................... 8

           2.     The Act Fails to Provide Any Mechanism by Which a Minor May
               Obtain Authorization for an Abortion Without Notification of a
               Parent. .................................................................................. 9

           3.     The Act Violates the Privacy Rights of Minors Seeking Abortions
               by Imposing a Parental Involvement Requirement Without
               Providing Any Medical Emergency Exception. ............................ 13

      C.     The Act Is Unconstitutionally Vague. ....................................... 15

      D.     The Act Violates the Equal Protection Clause of the Fourteenth
           Amendment.............................................................................. 21

           1.     The Act Creates an Impermissible Classification Between Minors
               Who Are Statutorily Authorized to Provide Consent to Health
               Services and Seek Abortions and Minors Who Are Statutorily
               Authorized to Provide Consent to Health Services and Seek Other
               Medical Services.................................................................... 22

           2.     The Act Creates an Impermissible Classification Between Medical
               Service Providers Who Provide Abortions to Minors and Medical
               Service Providers Who Provide Other Medical Services
               to Minors. ............................................................................. 23

V.     CONCLUSION.................................................................................... 25

# TABLE OF AUTHORITIES

**Federal Cases**

*Akron Ctr. for Reproductive Health v. Slaby*, 854 F.2d 852 (6th Cir. 1988),
  *rev'd sub nom on other grounds Ohio v. Akron Ctr. for Reproductive Health*,
  497 U.S. 502 (1990) ................................................................................................. 11

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .................................................... 6

*Baggett v. Bullitt*, 377 U.S. 360 (1964) ................................................................. 16, 19

Bellotti v. Baird, 443 U.S. 622 (1979) .................................................................... *passim*

*Citizens for Responsible Government State Political Action Committee v.*
  *Davidson*, 236 F.3d 1174 (10th Cir. 2000) ................................................................ 17

*City of Cleburne, Texas  v. Cleburne Living Ctr.*, 473 U.S. 432 (1985) .................... 21, 22

*Colautti v. Franklin*, 439 U.S. 379 (1979) ..........................................................16, 19, 20

*Edwards v. Valdez*, 789 F.2d 1477 (10th Cir. 1986) ...................................................... 21

*Evans v. Kelley*, 977 F. Supp. 1283 (E.D. Mich. 1997) ................................................. 20

*Glick v. McKay*, 937 F.2d 434 (9th  Cir. 1991) ...................................................... 11, 12

*Grayned v. City of Rockford*, 408 U.S. 104 (1972) ................................................. 15-16

*H. L. v. Matheson*, 450 U.S. 398 (1981) ...................................................................... 12

*Hodgson v. Minnesota*, 497 U.S. 433 (1990) .................................................................. 6

*Indiana Planned Parenthood  v. Pearson*, 716 F.2d 1127 (7th Cir. 1983) ...................... 11

*Jane L. v. Bangerter*, 61 F.3d 1493 (10th Cir. 1995),
  *rev'd and remanded on other grounds sub. nom. Leavitt v. Jane L.*,
  518 U.S. 137 (1996). ......................................................................................... 13, 15

*Lambert v. Wicklund*, 520 U.S. 292 (1997) ........................................................... 8, 9, 12

*Lindsey v. Normet*, 405 U.S. 56 (1972) ........................................................................ 23

*Ohio v. Akron Center for Reproductive Health*, 497 U.S. 502 (1990) ......................... 9, 10

*Planned Parenthood of Central Missouri v. Danforth*, 428 U.S. 52 (1976) ...................... 6

*Planned Parenthood of the Blue Ridge v. Camblos*, 155 F.3d 352 (4th Cir. 1998) ......... 12

*Planned Parenthood v. Casey*, 505 U.S. 833 (1992) ............................................... *passim*

*Planned Parenthood v. Owens*, 107 F. Supp. 2d 1271 (D. Colo. 2000),
    *appeal argued*, 00-13-85 (10th Cir. May 16, 2001) ............................................... 14, 15

*Planned Parenthood, Sioux Falls Clinic v. Miller*, 63 F.3d 1452
    (8th Cir. 1995), *cert. denied sub nom Janklow v. Planned Parenthood,*
    *Sioux Falls Clinic*, 517 U.S. 1174 (1996) ................................................... 9, 11, 12, 20

*Roe v. Wade*, 410 U.S. 113 (1973) .................................................................................. 13

*Romer v. Evans*, 517 U.S. 620 (1996) ...................................................................... 23, 25

*Smith v. Goguen*, 415 U.S. 566 (1974) ..................................................................... 15, 16

*Stenberg v. Carhart*, 530 U.S. 914 (2000) ..................................................................... 13

*Summit Medical Assocs. v. James*, 984 F. Supp. 1404 (M.D. Ala. 1998),
    *aff'd in part and rev'd in part on other grounds*, 180 F.3d 1326
    (11th Cir. 1999), *cert. denied*, 529 U.S. 1012 (2000) ........................................... 19-20

*Thornburgh v. ACOG*, 476 U.S. 747 (1986) ................................................................... 13

*Williams v. Rhodes*, 393 U.S. 23 (1968) ........................................................................ 21

*Women's Medical Prof. Corp. v. Voinovich*, 130 F.3d 187 (6th Cir. 1997) .................... 20

*Zbaraz v. Hartigan*, 763 F.2d 1532 (7th Cir. 1985), *aff'd per curiam*
    *by an equally divided court*, 484 U.S. 171 (1987); .................................................... 12

**State Cases**

*Benson v. Tkach*, 30 P.3d 402 (Okla. Ct. App.), *cert. denied* (2001) .............................. 24

*In re Siegmann*, 757 P.2d 820 (Okla. 1988) ................................................................... 17

*State v. 1985 GMC Pickup*, 898 P.2d 1280 (Okla. 1995) ............................................... 17

**Federal Statutes**

42 U.S.C. §§ 1396a(a)(25), 1396k .................................................................................... 5

**State Statutes**

Okla. Stat. tit. 10, § 170.1(A)(2) ..................................................................................... 24

Okla. Stat. tit. 43A. § 2-101 .................................................................................... 5

Okla. Stat. tit. 43A. § 2-102 .................................................................................... 5

Okla. Stat. tit. 43A. § 3-101 .................................................................................... 5

Okla. Stat. tit. 63, § 1-740 ...........................................................................1, 4, 24, 25

Okla. Stat. tit. 63, § 2601 ................................................................................. 18, 22

Okla. Stat. tit. 63, § 2602 ..............................................................................18, 22, 24,

Okla. Stat. tit. 63, §§ 3204, 3208 ............................................................................ 5

Okla. Stat. tit. 63, §§ 5009.1(A)(2), 5051.1 ........................................................... 5

Okla. Stat. tit. 70, § 3301 ....................................................................................... 5

Okla. Stat. tit. 70, § 3103 ....................................................................................... 5

Okla. Stat. tit. 70, § 3307 ....................................................................................... 5

Okla. Stat. tit. 70, § 3312 ....................................................................................... 5

Okla. Stat. tit. 70, §3423 ........................................................................................ 5

**Federal Regulations**

42 C.F.R. § 433.135 ............................................................................................... 5

**State Regulations**

Okla. Admin. Code § 317:35-5-43 .......................................................................... 5

## I.  Introduction

Section 2 of Oklahoma Laws 2001, c. 379 (House Bill 1727), codified as Okla. Stat. tit. 63, § 1-740 ("the Act"), subjects abortion providers to unlimited, strict liability for "subsequent medical costs" if they provide an abortion to a minor without "parental consent or knowledge." Though the one sentence law is vague in some respects, it undoubtedly places abortion providers at risk of liability if they provide abortions without "parental consent or knowledge." Therefore, Plaintiff Reproductive Services now requires parental consent before providing abortions to minors.

The Act falls short of the requirements for laws requiring that a minor involve her parents prior to obtaining an abortion in two respects. First, the Act lacks an alternative to "parental consent or knowledge" for those minors for whom involvement of their parent is contrary to their best interest or who are mature enough to make the decision independently. Second, the Act does not excuse the failure to obtain "parental consent or knowledge" in those situations in which delay puts the minor's health or even life at risk.

Having failed to include these protections mandated by the U.S. Supreme Court, the Act violates Plaintiff's minor patients' right to privacy. Additionally, the Act violates Plaintiff's due process rights due to vagueness and violates the equal protection rights of Plaintiff and its patients.

## II.  Statement of Material Facts as to Which No Genuine Issue Exists

1. Plaintiff Nova Health Systems, dba Reproductive Services, provides abortions to minors. (*See* Declaration of Linda Meek ¶¶ 3, 5; *see also* Declaration of Stanley Henshaw ¶¶ 12-13)

2.   Prior to enactment of the Act, Reproductive Services encouraged minors seeking abortions to involve a parent in that decision, but did not require that all minors do so.  (*See* Meek Dec. ¶¶ 6-12)

3.   The vast majority of the minors seeking abortions at Reproductive Services involved a parent without being required to do so by statute or clinic policy.  (*See* Meek Dec. ¶¶ 6-7; *see also id.* at ¶ 8; Henshaw Dec. ¶¶ 21-26)

4.   Not all minors in Oklahoma live with two parents: some live in single-parent households, some live with a grandparent, some live in foster care, and some are in the custody of the state Department of Human Services.  (*See* Henshaw Dec. ¶ 4; Meek Dec. ¶¶ 8, 28, 35)

5.   Some minors in Oklahoma are legally emancipated, married, and/or have a dependent child.  (*See* Henshaw Dec. ¶ 6; Meek Dec. ¶ 30; Declaration of Diana Philip ¶ 15)

6.   Some minors in Oklahoma are victims of abuse.  (*See* Henshaw Dec. ¶ 5; Meek Dec. ¶¶ 10, 29; Philip Dec. ¶¶ 6, 10, 14)

7.   A woman who has had an abortion might later seek medical treatment from a medical service provider in Oklahoma for a physical or mental condition that she or someone else attributes to her having received an abortion.  (*See* Declaration of Philip Darney ¶ 15; *see also* Meek Dec. ¶¶ 15-16)

8.   Reproductive Services believes it may be subjected to lawsuits brought for harassment purposes as a result of the Act.  (*See* Meek Dec. ¶¶ 17-20)

9.   The meaning of the Act is not clear to Reproductive Services; in particular, Reproductive Services does not know what "knowledge" by a parent is sufficient to comply with the Act or how it can establish the existence of such "knowledge" without

requiring a parent to accompany the minor to the clinic. (*See* Meek Dec. ¶¶ 14-16, 21, 25)

10. Reproductive Services does not believe that it can avoid the risk of liability under the Act if it notifies a minor's parents before performing an abortion on the minor, but does not ensure itself that a parent has consented to the procedure. (*See* Meek Dec. ¶¶ 14-16, 21)

11. Since enactment of the Act, Reproductive Services has been requiring that all minors seeking abortions, including emancipated, married and abused minors, have the consent of a parent or documented legal guardian or court-appointed managing conservator and be accompanied by that adult to the clinic. (*See* Meek Dec. ¶¶ 14-16, 21-31)

12. Reproductive Services does not know if its new policy and procedures will be sufficient to insulate it from liability under the Act. (*See* Meek Dec. ¶¶ 14, 21-22, 25)

13. Reproductive Services does not know the extent of its possible exposure if it has guessed incorrectly as to the meaning of the Act. (*See* Meek Dec. ¶¶ 14-17)

14. As a result of its new policy, Reproductive Services has declined to provide abortions to some minors seeking that medical procedure. (*See* Meek Dec. ¶¶ 22, 26-31; *see also* Philip Dec. ¶¶ 5-18)

15. Minors who do not wish to involve a parent in obtaining an abortion may travel to another state to obtain an abortion or take steps such as obtaining an illegal abortion or self-inducing an abortion to avoid involving a parent. (*See* Meek Dec. ¶¶ 32-34; Henshaw Dec. ¶¶ 30-31; Philip Dec. ¶¶ 5-18)

16. Imposing a requirement of parental consent or notification before an abortion is obtained will cause some minors to delay obtaining that procedure.  (*See* Meek Dec. ¶¶ 32-35; Henshaw Dec. ¶¶ 14-15, 31; Philip Dec. ¶¶ 9, 13)

17. The process of obtaining "parental consent or knowledge" before an abortion is performed on a minor may cause some delay in the performance of the abortion.  (*See* Meek Dec. ¶¶ 32-35; Henshaw Dec. ¶ 18-20)

18. The medical risks associated with having an abortion increase as the pregnancy progresses.  (*See* Darney Dec. ¶ 13; Henshaw Dec. ¶ 16-17; *see also* Darney Dec. ¶¶ 9-12, 14)

19. Some minors experience medical conditions during their pregnancies that pose a risk to their health and/or life if they do not promptly terminate their pregnancy. (*See* Darney Dec. ¶¶ 16-32)

20. Obtaining "parental consent or knowledge" prior to performing an abortion on a minor with a condition that poses health or life risks if the minor's pregnancy is not promptly terminated could jeopardize the health of the minor.  (*See* Darney Dec. ¶¶ 16-32)

### III.    The Statutory Framework

The Act provides that:

Any person who performs an abortion on a minor without parental consent or knowledge shall be liable for the cost of any subsequent medical treatment such minor might require because of the abortion.

Okla. Stat. tit. 63, § 1-740.  The Act does not include any exceptions for liability on the basis of the quality of the care exercised by the abortion provider or any other basis, thus imposing strict liability, whether or not there is evidence of medical malpractice or intentional harm.  The Act also lacks a good faith exception, which would

absolve an abortion provider of liability if he or she relied in good faith on the consent of an adult who falsely claimed to be the minor's parent.  Moreover, the Act does not define "parental consent or knowledge," thus failing to indicate whether consent of one or both parents is required and what level of parental involvement or "knowledge" is required.  Furthermore, the statute fails to indicate what proof of such "parental consent or knowledge," if any, an abortion provider must obtain to insulate itself from liability under the Act.

Defendants Gandy, Cline, Boren and Halligan all oversee state institutions that provide medical treatment.  *See* Okla. Stat. tit. 63, §§ 3204, 3208; *id.*, tit. 43A, §§ 2-101, 2-102, 3-101; *id.*, tit. 70, §§ 3301, 3103, 3307, 3312, 3423.  As the providers of medical services, these defendants may provide "subsequent medical treatment" to women who obtained abortions while minors without "parental consent or knowledge," and which the woman or the treatment provider may claim was "required because of the abortion."  In such instances, under the Act these defendants can seek to recover costs of that treatment from the abortion provider.  Defendant Fogarty is Chief Executive Officer of the Oklahoma Health Care Authority, which administers the State Medicaid program, and is empowered and required to seek to recover payment for medical services provided under Medicaid from liable third parties.  *See* Okla. Stat. tit. 63, §§ 5009.1(A)(2), 5051.1; Okla. Admin. Code § 317:35-5-43; *see also* 42 U.S.C. §§ 1396a(a)(25), 1396k; 42 C.F.R. § 433.135 *et seq.*  If a woman who had an abortion while a minor without "parental consent or knowledge" is Medicaid-eligible at the time she seeks "subsequent medical care" which the woman or the treatment provider claim was "required because of the abortion," Defendant Fogarty can seek to recover costs of that treatment from the abortion provider.

**IV.    Argument**

    **A.    Summary Judgment Standard**

A party is entitled to summary judgment if the pleadings and supporting evidentiary materials "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Once the moving party shows the absence of a genuine issue of material fact, the burden shifts to the non-moving party to demonstrate through the production of significantly probative, and not merely colorable, evidence that an issue of fact remains to be tried. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

    **B.    The Act Violates Young Women's Right to Privacy.**

Minors have a right to privacy under the United States Constitution that encompasses the right to seek an abortion. *See, e.g., Hodgson v. Minnesota*, 497 U.S. 433, 434-35 (1990); *Planned Parenthood of Central Missouri v. Danforth*, 428 U.S. 52, 74 (1976). Although the State may place greater limits on a minor's ability to exercise that right than it could on an adult's, the State may not unduly burden a minor's exercise of that right without violating the federal constitution. *See, e.g., Bellotti v. Baird*, 443 U.S. 622, 640 (1979) (plurality opinion) ("*Bellotti II*"). As the Supreme Court has stated, "[t]he need to preserve the constitutional right [to seek an abortion] and the unique nature of the abortion decision, especially when made by a minor, require a State to act with particular sensitivity when it legislates to foster parental involvement in this matter." *Bellotti II*, 443 U.S. at 642.

The Act makes abortion providers strictly liable for the costs of any subsequent medical treatment claimed to be "require[d]" by a minor "because of the abortion," unless there is "parental consent or knowledge." Thus, each time a physician performs an

abortion on a minor without adequately ensuring that there is "parental consent or knowledge," he or she faces exposure to unlimited and unforeseeable costs, irrespective of whether he or she conforms to the medical standard of care in performing the procedure.  As a result, the Act forces abortion providers to ensure that a minor has parental consent, or at a minimum "parental knowledge."  The State has imposed that requirement for abortions on any minors, without exception, even on those who are emancipated, mature, sexually or physically abused by family members, or pregnant due to rape or incest.  The Act also makes no exception for a minor who needs an abortion without delay to preserve her health or life

Because of the uncertainty of what constitutes compliance with the "parental consent or knowledge" requirement and the need to avoid unlimited strict liability under the Act, Reproductive Services instituted a new policy and new procedures, requiring that all minors seeking abortions have the consent of a parent, legal guardian, or court-appointed managing conservator and be accompanied by that adult to the clinic.  (*See* Meek Dec. ¶¶ 14-16, 21-31; *see also* Section IV.C, *infra* [discussing vagueness of the Act])  This requirement is being imposed even on minors who are emancipated, married or abused.  (*See id.* ¶¶ 21-25, 27, 29-30)

By imposing this universal, standardless requirement for "parental consent or knowledge," the Act violates minors' right to seek an abortion in at least two ways: (1) it fails to provide any mechanism by which a mature minor or one for whom an abortion would be in her best interest may obtain an abortion without "parental consent or knowledge;" and (2) it fails to provide any exception for situations in which an abortion is needed without delay to preserve the health or life of the minor.

1.    **The Act Fails to Provide a Judicial Bypass Mechanism by Which a Minor May Obtain Authorization for an Abortion Without Parental Consent.**

It is well-established that a state may not "lawfully authorize an absolute parental veto over the decision of a minor to terminate her pregnancy." *Bellotti II*, 443 U.S. at 639 (citing *Danforth*, 428 U.S. at 74). The U.S. Supreme Court has held that where a state imposes a requirement that one or both parents consent before an abortion is performed on a minor, the state "also must provide an alternative procedure whereby authorization for the abortion can be obtained." *Bellotti II*, 443 U.S. at 643 (footnote omitted); *accord, e.g., Lambert v. Wicklund*, 520 U.S. 292, 295 (1997) (reaffirming requirements for bypass articulated in *Bellotti II*); *Planned Parenthood v. Casey*, 505 U.S. 833, 899 (1992) (same). Such an alternative procedure is constitutionally required in the abortion context because of the unique nature of the abortion decision. As the Supreme Court has explained,

> The pregnant minor's options are much different from those facing a minor in other situations, such as deciding whether to marry. . . . A pregnant adolescent . . . cannot preserve for long the possibility of aborting, which effectively expires in a matter of weeks from the onset of pregnancy.
>
> Moreover, the potentially severe detriment facing a pregnant woman is not mitigated by her minority. . . . In sum, there are few situations in which denying a minor the right to make an important decision will have consequences so grave and indelible.

*Bellotti II*, 443 U.S. at 642 (internal citation omitted).

This constitutionally mandated "alternative procedure" is typically referred to as a "judicial bypass," because the procedure allows the minor to obtain court approval to proceed with an abortion, thus bypassing the requirement that her parent or parents consent to her planned abortion. *See, e.g., Lambert*, 520 U.S. at 295. In *Bellotti II*, the

Court held a judicial bypass must satisfy four criteria. *Bellotti II*, 443 U.S. at 643-44; *see also Lambert*, 520 U.S. at 295; *Ohio v. Akron Center for Reproductive Health*, 497 U.S. 502, 511 (1990) ("*Akron II*"). First, the minor must have the opportunity to obtain authorization for the abortion if she shows that "she is mature enough and well enough informed to make her abortion decision, in consultation with her physician, independently of her parents' wishes." *Bellotti II*, 443 U.S. at 643; *see also Akron II*, 497 U.S. at 511. Second, the minor must have the opportunity to obtain authorization "even if she is not able to make this decision independently, [if] the desired abortion would be in her best interests."[1] *Bellotti II*, 443 U.S. at 644; *Akron II*, 497 U.S. at 511. Third, "the procedure must insure the minor's anonymity." *Akron II*, 497 U.S. at 512; *Bellotti II*, 443 U.S. at 644. Fourth, the bypass procedure must be conducted with "sufficient expedition to provide an effective opportunity for an abortion to be obtained." *Bellotti II*, 443 U.S. at 644; *Akron II*, 497 U.S. at 513. The Act at issue here fails to provide for *any* judicial bypass procedure by which a minor may obtain an abortion without parental consent, much less one that meets these requirements, and therefore is unconstitutional

**2.     The Act Fails to Provide Any Mechanism by Which a Minor May Obtain Authorization for an Abortion Without Notification of a Parent.**

Even if an abortion provider could safely interpret the phrase "parental consent or knowledge" to require only that a parent be notified before his or her daughter obtained an abortion, the Act would be unconstitutional due to the absence of an adequate alternative procedure through which a minor could seek waiver of the parental

---

[1] A minor for whom an abortion, or an abortion without consent or notification, would be in her best interest is termed a "best interest" minor in this context. *See, e.g., Planned Parenthood, Sioux Falls Clinic v. Miller*, 63 F.3d 1452, 1460 (8th Cir. 1995), *cert. denied sub nom Janklow v. Planned Parenthood, Sioux Falls Clinic*, 517 U.S. 1174 (1996).

notification requirement.  The Supreme Court has not yet directly faced the issue of

whether a statute requiring notice to one or both parents must contain a judicial bypass

mechanism, or whether the standards articulated by the Court in *Bellotti II* must be

applied to determine the adequacy of a bypass mechanism in such a statute. In *Akron II*,

the Court wrote:

> [W]e note that, although our cases have required bypass procedures for
> parental consent statutes, we have not decided whether parental notice
> statutes must contain such procedures.  We leave the question open . . . .

497 U.S. at 510 (noting that statute at issue contained bypass procedure which met

*Bellotti II* requirements) (internal citation omitted).  However, Justice Stevens,

concurring in the judgment, made the following observation:

> The Court correctly states that we have not decided the specific question
> whether a judicial bypass procedure is necessary in order to save the
> constitutionality of a one-parent notice statute.  . . . *We have, however,
> squarely held that a requirement of preabortion parental notice in all
> cases involving pregnant minors is unconstitutional.*  Although it need not
> take the form of a judicial bypass, the State must provide an adequate
> mechanism for cases in which the minor is mature or notice would not be
> in her best interests.

*Id.* at 522 (Stevens, J., concurring in part and concurring in the judgment) (emphasis

added).  The Act here lacks *any* alternative mechanism for mature or "best interest"

minors.

Moreover, pronouncements by the Supreme Court in both *Bellotti II* and *Casey*

indicate that, if directly faced with the issue, the Court would require that a parental

notice statute, like a parental consent statute, contain an adequate judicial bypass.  *See*

*Casey*, 505 U.S. at 897 (invalidating a spousal notification requirement for married

women in part because requiring notification "will often be tantamount to [providing] the

veto" power granted by a spousal consent requirement).  In *Bellotti II*, the Court found

Massachusetts' statute unconstitutional in part because it required parental notification or consultation even for minors seeking a court order waiving the consent requirement. 443 U.S. at 647 ("We conclude, therefore, that under state regulation such as that undertaken by Massachusetts, every minor must have the opportunity -- if she so desires -- to go directly to a court without first consulting or notifying her parents.").

Furthermore, the Sixth, Seventh, and Eighth Circuit Courts of Appeal have explicitly held that a parental notice statute must contain a judicial bypass mechanism and no federal court of appeal has ever upheld a notice statute that applied to mature minors and did not contain such a mechanism. *See Planned Parenthood, Sioux Falls Clinic v. Miller*, 63 F.3d 1452, 1460 (8th Cir. 1995) (parental notice statute must have bypass mechanism meeting requirements applicable to parental consent statutes), *cert. denied sub nom Janklow v. Planned Parenthood, Sioux Falls Clinic*, 517 U.S. 1174 (1996); *Akron Ctr. for Reproductive Health v. Slaby*, 854 F.2d 852, 861 (6th Cir. 1988) (holding that notice statute must contain bypass procedure that meets *Bellotti II* standards), *rev'd sub nom on other grounds Ohio v. Akron Ctr. for Reproductive Health*, 497 U.S. 502 (1990) (declining to decide if notice statute must have bypass mechanism because Court found that bypass mechanism contained in the statute met *Bellotti II* requirements); *Indiana Planned Parenthood v. Pearson*, 716 F.2d 1127 (7th Cir. 1983) (finding Indiana parental notice statute unconstitutional because bypass procedures did not meet standards mandated for consent statutes); *see also Glick v. McKay*, 937 F.2d 434, 441-42 (9th Cir. 1991) (finding that notice statute's bypass procedure failed constitutional scrutiny because it failed to meet requirements for a consent statute and, alternatively, because it failed to specifically provide an expeditious bypass

mechanism);[2] *Zbaraz v. Hartigan*, 763 F.2d 1532, 1539-44 (7th Cir. 1985) (enjoining notice statute providing judicial bypass procedure until state court enacted rules assuring the expeditious and confidential disposition of such proceedings), *aff'd per curiam by an equally divided court*, 484 U.S. 171 (1987); *cf. H. L. v. Matheson*, 450 U.S. 398, 407 (1981) (upholding parental notice law that lacked bypass, but only as applied to immature, dependent minors).[3]

Mature and "best interest" minors must have an opportunity to obtain an abortion expeditiously without either parental consent or notification. As the Eighth Circuit Court of Appeals has observed, "[n]otifying the parent of the daughter's intentions . . . before the abortion can be performed gives the parent the opportunity to obstruct the daughter's choice, just as requiring consent gives parents the tool with which to do so." *Miller*, 63 F.3d at 1459. Therefore, whether the Act is construed as imposing liability for failure to obtain parental consent or only for failure to ensure "parental knowledge," the Act is unconstitutional due to its failure to include any bypass mechanism for mature minors and those for whom an abortion is in their best interest.

---

[2] Because the Supreme Court had declined to address whether a notice statute must contain a bypass mechanism, the Ninth Circuit considered whether the Nevada statute met "the requirements of the less intrusive notification statute." *Glick*, 937 F.2d at 441. The court held that "[b]ecause time is such a critical factor, relating both to a woman's health and the exercise of her constitutional right to an abortion," a notice statute must specifically provide an expeditious bypass mechanism. *Id.* at 442.

    Although the Supreme Court in *Lambert* disagreed with the Ninth Circuit's formulation of the "best interest" prong of the *Bellotti II* requirements, the Court's ruling in *Lambert* neither rejected *Glick*'s application of the *Bellotti II* standards to a parental notice bypass mechanism nor the Ninth Circuit's holding that a parental notice statute must contain an expeditious bypass procedure. *See Lambert*, 520 U.S. at 297-98.

[3] *But cf. Planned Parenthood of the Blue Ridge v. Camblos*, 155 F.3d 352, 367-72 (4th Cir. 1998) (upholding notice law containing judicial bypass provision, but stating in dicta that notice statute need not provide "full panoply of safeguards required by the Court in *Bellotti II* for parental consent statutes").

3.      **The Act Violates the Privacy Rights of Minors Seeking Abortions by Imposing a Parental Involvement Requirement Without Providing Any Medical Emergency Exception.**

The Act is also unconstitutional because it does not contain any exception to its parental "consent or knowledge" requirement for abortions necessary to prevent harm to a minor's health or life.  More than twenty-five years of Supreme Court precedent make clear that such an absence is a fatal defect.

As the Court of Appeals for the Tenth Circuit has recognized, "[t]he importance of maternal health is a unifying thread that runs from *Roe* to *Thornburgh* and then to *Casey.*" *Jane L. v. Bangerter*, 61 F.3d 1493, 1504 (10th Cir. 1995), *rev'd and remanded on other grounds sub. nom. Leavitt v. Jane L.*, 518 U.S. 137 (1996).  Indeed, in an unbroken line of cases, from *Roe v. Wade* through *Stenberg v. Carhart*, the Supreme Court has consistently held that restrictions on the provision of abortions must include an exception for situations in which the woman's health and/or life will be placed at risk. *See Stenberg v. Carhart*, 530 U.S. 914, 930 (2000) (finding abortion restriction unconstitutional because although it included a life exception, it lacked any exception for preservation of the health of the woman); *Casey*, 505 U.S. at 879-80 (upholding law in part because it contained an emergency exception "to assure that compliance with [the] abortion regulations would not in any way pose a significant threat to the life or health of a woman") (internal citation omitted); *Thornburgh v. ACOG*, 476 U.S. 747, 768-71 (1986) (finding abortion restriction unconstitutional due to lack of medical emergency exception); *Roe v. Wade*, 410 U.S. 113, 164-65 (1973) (holding that even bans on post-viability abortions must contain exceptions for abortions "necessary, in appropriate medical judgment, for the preservation of the life or health of the mother").  Because the Act lacks any exception whatsoever for situations in which an abortion without parental

consent or knowledge is necessary to protect a young woman's health or life, it is unconstitutional.

All of the parental consent or notice statutes upheld by the Supreme Court have contained an exception for emergency situations in which the minor's health would be placed at risk if the procedure is delayed while consent is obtained or notice is provided. *See, e.g., Casey*, 505 U.S. at 899 (parental consent required "[e]xcept in a medical emergency"); *Bellotti II*, 443 U.S. at 646 (parental consent required only for a "nonemergency abortion"). Recently, the United States District Court for the District of Colorado found a parental notice law in Colorado facially unconstitutional due to its failure to include an exception permitting physicians to perform abortions without notice where needed to protect the health of the pregnant minor. *Planned Parenthood v. Owens*, 107 F. Supp. 2d 1271 (D. Colo. 2000), *appeal argued*, 00-1385 (10th Cir. May 16, 2001). As that court found, Supreme Court decisions have made it clear that "an abortion regulation that puts a woman's health in jeopardy, regardless of her age or maturity, is unconstitutional." 107 F. Supp. 2d at 1281.[4]

As the evidence here shows, minor women may experience medical conditions during pregnancy that pose a risk to their health or life if they do not promptly terminate their pregnancy. (*See* Darney Dec. ¶¶ 16-32) *See also Casey*, 505 U.S. at 880 (agreeing with court of appeals that "preeclampsia, inevitable abortion, and premature ruptured membrane" were conditions posing serious health risks and therefore coming within

---

[4] The Colorado statute failed to provide an exception for preservation of the minor's health or life. *See* 107 F. Supp. 2d at 1282-83. It did provide an affirmative defense for a physician who performed an abortion on a minor without parental notification in order to prevent imminent death, but the court noted that even if an affirmative defense satisfied the need for a medical emergency exception, protection against "imminent death" did not satisfy the need for a health exception. *Id.* at 1283.

statute's medical emergency exception); *Owens*, 107 F. Supp. 2d at 1277 (finding that

conditions which could require immediate attention to avoid harm to minors' health

include preeclampsia, premature rupture of membranes, and inevitable spontaneous

abortion). Requiring an abortion provider to ensure "parental consent or knowledge"

prior to performing an abortion on a minor with such a condition could jeopardize the

health of the minor and is not medically justified. (*See* Darney Dec. ¶¶ 16-32) Without

an exception for medical emergency situations, the Act violates the right to privacy of

minor women.

### C.    The Act Is Unconstitutionally Vague.

Due process prohibits laws so vague that persons "of common intelligence must

necessarily guess at [their] meaning and differ as to [their] application." *Smith v.

Goguen*, 415 U.S. 566, 572 n.8 (1974); *accord Jane L.*, 61 F.3d at 1500. Vague laws

offend due process in two ways. First, they fail to provide the persons targeted by the

statute with a "reasonable opportunity to know what is prohibited, so that [they] may act

accordingly." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972); *Jane L.*, 61 F.3d at

1500 (abortion restriction prohibiting "experimentation" on "live unborn children" void

for vagueness). Second, by failing to provide explicit standards by which to assess

conduct, vague laws "impermissibly delegate[] basic policy matters . . . for resolution on

an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory

application." *Grayned*, 408 U.S. at 108-09; *see also Jane L.*, 61 F.3d at 1502 (abortion

restriction which "fail[s] to draw a clear line between proscribed and permitted conduct"

is unconstitutionally vague).[5]

A vague law is especially problematic and the standard of a court's review is therefore more stringent where, as here, "the uncertainty induced by the statute threatens to inhibit the exercise of constitutionally protected rights." *Colautti v. Franklin*, 439 U.S. 379, 391 (1979) (citations omitted); *see also Baggett v. Bullitt*, 377 U.S. 360, 372 (1964). Vague standards of proscribed conduct, coupled with the prospect of arbitrary enforcement, will in many instances cause persons to "'steer far wider of the unlawful zone' . . . than if the boundaries of the forbidden areas were clearly marked." *Baggett*, 377 U.S. at 372 (quoting *Speiser v. Randall*, 357 U.S. 513, 526 (1958)).

Courts have not tolerated vagueness in laws regulating abortion, including those that seek to alter the standard of care a physician owes to his or her patient, particularly because of the potential for chilling the provision of services. In *Colautti*, for example, the Supreme Court held impermissibly vague a state abortion statute requiring a physician to adopt a particular standard of care whenever the physician determined that a fetus "[was] viable" or "there [was] sufficient reason to believe that the fetus may be viable." 439 U.S. at 391. The Court emphasized that, while "viable" and "may be viable" presumably had different meanings, a physician could not know from the statute what they were. The law provided no guidance. "Instead, it condition[ed] potential . . . liability on confusing and ambiguous criteria," and was therefore impermissibly vague. *Id.* at 394.

---

[5] Preventing arbitrary and discriminatory enforcement of a law is particularly important where the law relates to a matter as to which there are deep divisions in society. That some persons will be politically or philosophically motivated to enforce unclear laws in a capricious fashion is an unfortunate but foreseeable fact. *Cf. Goguen*, 415 U.S. at 575 (striking down statute forbidding "contemptuous" treatment of flag because "[s]tatutory language of such a standardless sweep allows policemen, prosecutors, and juries to pursue their personal predilections").

The meaning of the Act is unclear in at least six ways, thus rendering it unconstitutionally vague.  First, the meaning of the term "parental consent" is unclear. The statute provides no indication whether the consent of one or both parents is required in order for an abortion provider to avoid liability under the Act.  Nor is there any legislative history that could assist the Court in determining legislative intent.  *Cf. State v. 1985 GMC Pickup*, 898 P.2d 1280, 1282 (Okla. 1995) (where it is feasible to determine legislative intent, court should construe statute so as not to violate that intent).[6]

Second, the meaning of the term "parental consent or knowledge" is unclear, as the Act does not specify what the parent(s) must know.  For example, is it sufficient that a parent know that the minor plans to seek an abortion, or must the parent know that the minor is obtaining an abortion, or must the parent know that the minor is obtaining an abortion from a specific abortion provider?

Third, the use of the phrase "parental consent or knowledge" makes the level of required parental involvement unclear.  It is unclear whether "parental . . . knowledge" in the absence of parental consent would be sufficient to preclude liability, as such an interpretation makes the inclusion of the term "parental consent" superfluous.  *See, e.g., State v. 1985 GMC Pickup*, 898 P.2d at 1282 (statute must be construed in its entirety, so that every word is rendered operative); *In re Siegmann*, 757 P.2d 820, 824 (Okla. 1988). Similarly, if "consent" is required, inclusion of the term "knowledge" is superfluous, as the parent will necessarily "know" that the minor is seeking and obtaining an abortion. *See id.*  Moreover, it is unclear whether "parental . . . knowledge" would be sufficient if a

_____

[6] In construing the Act, this Court must look to Oklahoma courts' rules of statutory construction. *See, e.g., Citizens for Responsible Government State Political Action Committee v. Davidson*, 236 F.3d 1174, 1190 (10th Cir. 2000).

parent(s) explicitly refused to consent to the performance of the abortion, or if one parent consented and the other did not.

Fourth, the costs for which an abortion provider may be liable are uncertain under the Act because the phrase "any subsequent medical treatment such minor might require because of the abortion" is undefined. It is unclear whether it is limited to post-operative care required due to physical complications arising from the performance of the abortion or whether it also encompasses counseling a woman might seek many years after having had an abortion. The statute is also silent on how the courts would determine if the "subsequent medical treatment" is "required because of" the abortion. Does the woman's subjective opinion as to whether she requires treatment because of the abortion control or must she establish through medical experts that the treatment was required because of the abortion?

Fifth, the term "minor" as used in the Act is vague. Chapter 1 of title 63 does not contain a definition of "minor." Chapter 54 of the same title, dealing with Health Services for Minors, defines "minor" as "any person under the age of eighteen (18) years of age, except such person who is on active duty with or has served in any branch of the Armed Services of the United States shall be considered an adult." Okla. Stat. tit. 63, § 2601. It is not clear whether that definition of "minor" applies to the Act's provision. Moreover, it is not clear whether minors who are authorized by statute to self-consent to medical care -- which includes married minors, minors with dependent children, and emancipated minors, *see* Okla. Stat. tit. 63, § 2602(A)(1) -- are "minors" as that term is used in the Act.

Sixth, the Act is vague because it does not specify what the abortion provider must do to insulate itself from liability under the Act. For example, it does not specify any steps the provider should take to confirm or document the identity of the parent or the existence of "parental consent or knowledge."

Thus, it is unclear what an abortion provider must do in order to perform an abortion on a minor without the risk of liability under the Act. If an abortion provider guesses incorrectly as to the meaning of these terms, he or she will be exposed to the risk of unlimited, strict civil liability, without any specified standards by which to judge his or her conduct and without regard to fault or the degree of care or professional skill exercised in performing the abortion. Abortion providers who perform abortions on minors will be at risk of being sued for money damages whenever a minor, a parent, a health care provider, or the payer of medical claims -- whether the Medicaid program, a health maintenance organization, or an insurance company -- claims that the minor received "subsequent medical treatment" that was "require[d] because of the abortion." Given the controversy surrounding abortion in this country, the risk of such suits, irrespective of merit, is high. This type of uncertainty will inevitably cause abortion providers to "'steer far wider of the unlawful zone' . . . than if the boundaries of the forbidden areas were clearly marked." *See Baggett*, 377 U.S. at 372.

If this were not enough, the Act also lacks any scienter provision to protect an abortion provider who acts in good faith in attempting to ensure that he or she has obtained "parental consent or knowledge" before performing an abortion on a minor. Such strict liability compounds the vagueness of the Act. *See Colautti*, 439 U.S. at 394; *Summit Medical Assocs. v. James*, 984 F. Supp. 1404, 1447 (M.D. Ala. 1998) (citing

"perils of strict liability" and holding "where, as here, the specter of medical expert disagreement conjoins with a statute imposing strict criminal and civil liability for an erroneous medical determination, the result could very well be 'a profound chilling effect on the willingness of physicians to perform abortions'"), *aff'd in part and rev'd in part on other grounds*, 180 F.3d 1326 (11th Cir. 1999), *cert. denied*, 529 U.S. 1012 (2000); *Evans v. Kelley*, 977 F. Supp. 1283, 1311 (E.D. Mich. 1997) (holding that absence of scienter element in abortion statute exacerbated the vagueness of the statute). Courts have struck down statutes making abortion providers strictly liable, because of the potential chilling effect of such a provision. *See Miller*, 63 F.3d at 1467 ( "[t]he potential civil liability for even good-faith, reasonable mistakes is more than enough to chill the willingness of physicians to perform abortions in South Dakota"); *see also Women's Medical Prof. Corp. v. Voinovich*, 130 F.3d 187, 205 (6th Cir. 1997) ("objective standard combined with strict liability for even good faith determinations 'could have a profound chilling effect on the willingness of physicians to perform abortions.'") (quoting *Colautti*, 439 U.S. at 396), *cert. denied*, 523 U. S. 1036 (1998); *Summit Medical Assocs.*, 984 F. Supp. at 1447.

The uncertainty inherent in the Act has caused Reproductive Services to cease to provide abortions to many minors and has chilled the exercise of the right to choose. *See Colautti*, 439 U.S. at 391. In order to minimize the risk of strict liability and harassing lawsuits, Reproductive Services now requires that a parent provide explicit, in person consent to the provision of an abortion by one of the clinic's doctors to her or his minor daughter. (*See* Meek Dec. ¶¶ 14-16, 21-31) Reproductive Services is requiring that the parent come to the clinic with the minor for her abortion, that the parent and minor

produce identification, and that they sign a consent document before a notary public.

(*See id.* ¶¶ 22-31)  Reproductive Services is not performing abortions on emancipated, married, or abused minors without parental consent.  (*See id.*¶¶ 22, 28-30)  Even with these changes in policy and procedure, Reproductive Services does not know if the steps it is taking will be sufficient to insulate it from liability under the Act, nor does it know the extent of its possible exposure if it has guessed incorrectly as to the meaning of the Act.  (*See id.* ¶¶ 14-22)  To prevent the continuation of this chilling effect, this Court should declare the Act to be unconstitutionally vague.

**D.      The Act Violates the Equal Protection Clause of the Fourteenth Amendment.**

The Equal Protection Clause of the United States Constitution "commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Texas  v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) *(quoting Plyler v. Doe*, 457 U.S. 202, 216 (1982)); *see also Edwards v. Valdez*, 789 F.2d 1477, 1482 (10th Cir. 1986).  Although the Constitution does not prohibit all forms of "discrimination" among groups, it does forbid distinctions that (1) are invidious; (2) unnecessarily burden the fundamental rights of one group; or (3) are arbitrary or irrational.  *See, e.g., Cleburne*, 473 U.S. at 439-42; *Williams v. Rhodes*, 393 U.S. 23, 30-31 (1968).

The challenged Act singles out abortion providers who regularly provide abortions and their minor patients for the imposition of significant burdens.  The scheme creates at least two impermissible classifications: (1) between minors who are statutorily authorized to provide consent to health services and seek abortions and minors who are

- 21 -

statutorily authorized to provide consent to health services and seek other medical

services; and (2) between abortion providers and health professionals who provide other

medical services to minors.  The classifications violate the Equal Protection Clause

because they fail to pass muster even under the most minimal scrutiny, which requires

that the government's classification be rationally related to a legitimate state interest.

*See, e.g., Cleburne*, 473 U.S. at 442.[7]

> **1.     The Act Creates an Impermissible Classification Between Minors Who Are Statutorily Authorized to Provide Consent to Health Services and Seek Abortions and Minors Who Are Statutorily Authorized to Provide Consent to Health Services and Seek Other Medical Services.**

Under Oklahoma law, minors who are married, have a dependent child, are

emancipated, or who are "separated from [their] parents or legal guardian for whatever

reason" and do not receive their support are authorized to consent to the provision of

health services, which are defined to include examination, preventative and curative

treatment, and surgical, hospitalization, and psychological services.  Okla. Stat. tit. 63, §§

2601(c), 2602(A)(1), (2).  For those minors, whether a parent or legal guardian should be

informed about treatment needed or provided to these minors is left to the discretion of

the health care provider.  Okla. Stat. tit. 63, § 2602(B).  Furthermore, minors who are on

active duty with or have served in any branch of the Armed Services of the United States

are considered adults for purposes of consenting to health services.  Okla. Stat. tit. 63, §

2601(a).

---

[7] As alleged in the Complaint, the Act also violates the Equal Protection Clause by differentially treating the class of minors who are pregnant and seek abortions from the class of minors who are pregnant and seek other pregnancy-related medical care.  However, Plaintiff does not seek summary judgment as to this claim, but preserves it for disposition at a later stage of this case. Plaintiff also preserves the argument that the classifications made by the Act and addressed in this motion trigger a heightened level of scrutiny.

The Act singles out minors in these categories who seek abortions and treats them differently than minors in these categories who seek all other health services. This classification is not even rationally related to a legitimate state interest, because it is neither "reasonably tailored to achieve [the state's interests nor] uniformly and nondiscriminatorily applied." *Lindsey v. Normet*, 405 U.S. 56, 78 (1972). As the Supreme Court has stated:

> [E]ven in the ordinary equal protection case calling for the most deferential of standards, we insist on knowing the relation between the classification adopted and the object to be attained . . . . By requiring that the classification bear a rational relationship to an independent and legitimate legislative end, we ensure that classifications are not drawn for the purpose of disadvantaging the group burdened by the law.

*Romer v. Evans*, 517 U.S. 620, 632-33 (1996).

The Act does not serve any legitimate state interest. For example, any claim that the Act served an interest in minor's health is undermined by the State's determination that these minors may provide valid consent to health care. The State's explicit authorization of the right to provide valid consent to these minors presupposes that they are competent to consent to health services. Thus, the Act's restriction on these same minors' ability to provide valid consent to one particular health service – abortion – is not rationally related to any legitimate state interest.

> 2. **The Act Creates an Impermissible Classification Between Medical Service Providers Who Provide Abortions to Minors and Medical Service Providers Who Provide Other Medical Services to Minors.**

The Act arbitrarily singles out medical service providers who provide abortions to minors without "parental consent or knowledge" for discriminatory treatment not imposed upon their colleagues who provide other medical services to minors without

"parental consent or knowledge." Abortion providers, unlike providers of other medical services, face strict liability, without any good faith exception.

The Act imposes liability upon abortion providers for "any subsequent medical treatment [a] minor may require because of the abortion," without limitation. Okla. Stat. tit. 63, § 1-740. Thus, abortion providers are strictly liable for the cost of such treatment, whether or not there is evidence of medical malpractice or intentional harm. In contrast, medical service providers who provide any other health services to minors without "parental consent or knowledge" are generally not liable for the cost of subsequent medical treatment unless it is needed due to negligent care or intentional misconduct by the provider. *See, e.g., Benson v. Tkach*, 30 P.3d 402, 404 (Okla. Ct. App.), *cert. denied* (2001) (in medical malpractice cases, plaintiff has burden of proving that physician breached duty of care to plaintiff which resulted in harm).

In addition, the Act distinguishes providers of abortions to minors from providers of other medical services to minors by imposing liability on the former without providing a good faith exception. Under the Act, an abortion provider will be liable for subsequent medical treatment even if he or she obtains written – albeit false – documentation stating that the person consenting to the abortion is the minor's parent. In contrast, a medical service provider who provides health care to a minor in good faith reliance upon the consent of an adult who falsely claims to have legal custody or legal guardianship of the minor is absolved of liability. Okla. Stat. tit. 10, § 170.1(A)(2). Similarly, a medical service provider who provides health care to a minor in good faith reliance upon the false representation of the minor that he or she may self-consent is absolved of liability. Okla. Stat. tit. 63, § 2602(A).

This classification between medical service providers who provide abortion services to minors and those who provide other medical services to minors fails the

rational basis test.  The State has no legitimate interest in singling out abortion providers for the imposition of strict liability for subsequent medical care without any showing of malpractice or intentional harm and without a good faith exception.  The fact that the Act's classification is directed towards only a small, politically unpopular group bolsters this conclusion.  As the Supreme Court has cautioned, courts must carefully question classifications that disadvantage politically unpopular groups because such classifications "raise the inevitable inference that the disadvantage imposed is born of animosity toward the class of persons affected." *Romer*, 517 U.S. at 634.

## V.     Conclusion

For all of the foregoing reasons, this Court should grant Plaintiff's motion for summary judgment, declare Section 2 of Oklahoma Laws 2001, c. 379 (House Bill 1727), codified as Okla. Stat. tit. 63, § 1-740 ("the Act"), unconstitutional, and permanently enjoin its enforcement by Defendants on one or more of the following alternative grounds: the Act violates the right to privacy of minor women seeking abortions, violates Plaintiff's right to due process of law, and violates the equal protection rights of Plaintiff and its patients under the United States Constitution.

Dated: February 26, 2002

Respectfully submitted,

Bebe J. Anderson*
Jody Ratner*
The Center for Reproductive
    Law & Policy
120 Wall Street, 14th Floor
New York, NY 10005
(917) 637-3600
(f) (917) 637-3666

M. M. Hardwick, OBA #3847
P.O. Box 35975
Tulsa, OK  74153
(918) 749-3313
  (f) (918) 742-1819

Counsel for Plaintiff

*Application for admission *pro hac vice* granted.

- 25 -