IN UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

```
─────────────────────────────────── X
NOVA HEALTH SYSTEMS, DBA REPRODUCTIVE   :
SERVICES, on behalf of itself, its staff and its :
patients,                                :
                                         :
                 Plaintiff,              :
                                         :
vs.                                      :    Civil Case No. 01-CV-419 EA (X)
                                         :
MIKE FOGARTY, in his Official Capacity as :
Chief Executive Officer of the Oklahoma  :
Health Care Authority, et al.            :
                                         :
                 Defendants.             :
─────────────────────────────────── X
```

F I L E D
JUN 28 2002
Phil Lombardi, Clerk
U.S. DISTRICT COURT

ORIGINAL

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND RELATED EXPENSES

### INTRODUCTION

On June 14, 2002, this Court granted Plaintiff's request for declaratory and permanent injunctive relief in its challenge to the constitutionality of Section 2 of Oklahoma Laws 2001, c. 379 (House Bill 1727), codified as Okla. Stat. tit. 63, § 1-740 ("the Act"). As a result of that ruling, Plaintiff has prevailed in its efforts to have the Act declared unconstitutional and to have enforcement of the Act by Defendants Dean Gandy, Mike Fogarty, Terry L. Cline, David L. Boren and Dr. James Halligan enjoined. The Act imposes unlimited, strict liability for "subsequent medical costs" on abortion providers if they provide an abortion to a minor without "parental consent or knowledge." Plaintiff has thus vindicated rights secured by the Fourteenth Amendment of the United States Constitution, cognizable under 42 U.S.C. § 1983, and is therefore entitled to an award of attorneys' fees and related expenses under 42 U.S.C. § 1988.



Accordingly, for the reasons set forth below, Plaintiff seeks an award of $ 125,252.00, consisting of $ 122,460.50 in fees and $ 2,791.50 in costs, plus $ 716.50 in billable costs.[1]

## ARGUMENT

### I. PLAINTIFF IS ENTITLED TO ATTORNEYS' FEES AND COSTS UNDER 42 U.S.C. § 1988.

#### A. Plaintiff is a Prevailing Party.

As the United States Court of Appeals for the Tenth Circuit has noted,

> Congress enacted the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, authorizing the district courts to award a reasonable attorney's fee to prevailing parties in civil rights litigation to ensure "effective access to the judicial process" for persons with civil rights grievances. [citations omitted]. An award of fees under Section 1988 gives citizens access to the courts, and enables them to enforce the substantive provision of the civil rights laws enacted by the United States Congress.

Cooper v. Utah, 894 F.2d 1169, 1171 (10th Cir. 1990) (quoting Hensley v. Eckerhart, 461 U.S. 424, 429 (1983)). Because the plaintiff here is the prevailing party and because the fee request is eminently reasonable, Plaintiff respectfully requests that the Court grant its motion.

"[A] plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." Farrar v. Hobby, 506 U.S. 103, 111-112 (1992). See also Case v. Unified School Dist. No. 233, 157 F.3d 1243, 1249 (10th Cir. 1998) (plaintiff who succeeds on significant issue in litigation "which achieves some of the benefit the parties sought in bringing the suit" is prevailing party) (quoting Hensley, 461 U.S. at 433).

In this action, Plaintiff sought injunctive relief against Defendants to prevent the operation and enforcement of the Act against Plaintiff. Additionally, Plaintiff sought a judgment declaring that the Act is in violation of the United States Constitution. Plaintiff asserted claims

---

[1] Plaintiff is filing its Bill of Costs simultaneously with filing its Motion for Attorneys' Fees and Related Expenses.

under the Fourteenth Amendment of the U.S. Constitution, specifically the right of Plaintiff to due process of law, the right of Plaintiff's minor patients to privacy, and the rights of Plaintiff and its minor patients to equal protection. Plaintiff commenced this action on June 8, 2001; the Act became effective upon approval by the Governor of Oklahoma, who signed it on June 4, 2001.

On June 13, 2001, the Court held a hearing on Plaintiff's motion for a temporary restraining order and/or a preliminary injunction. At the hearing, Defendants raised oral challenges to the Court proceeding to the merits, arguing jurisdictional issues, such as improper venue, ripeness and Plaintiff's Article III standing. The Court then directed a special briefing on these preliminary issues. On July 5, 2001, the Court denied Plaintiff's motion for a temporary restraining order and/or a preliminary injunction. The ruling was based, in large part, on the Court's conclusion that a temporary injunction against Defendants would not alleviate the chilling effect of the Act because a party unnamed in the litigation would not be barred from bringing an action under the Act. In the same Order, the Court made preliminary rulings in Plaintiff's favor on the alleged jurisdictional problems, including Defendants' claims of Eleventh Amendment immunity, ripeness and Plaintiff's standing. In addition, the Court rejected Defendants' challenge to the Northern District of Oklahoma as improper venue.

In its July 5, 2001 Order, the Court requested that the parties prepare a joint status report and proposed schedule for proceeding to the merits of the action. However, by Order dated July 23, 2001, the Court directed Defendants to file motions to dismiss limited to the issue of Eleventh Amendment immunity. On October 17, 2001, the Court ruled on Defendants' motions to dismiss on the grounds of Eleventh Amendment immunity. The Court granted the motions of Defendants Kelsey, Edmondson and Beitsch and denied the motions of Defendants Gandy,

Cline, Boren, Halligan and Fogarty. The Court found that the latter five defendants had authority to enforce the challenged statute and were not entitled to immunity from the suit.

The remaining parties agreed to and then participated in discovery of limited time and scope. Following discovery, the parties filed the following motions: Plaintiff's Motion for Summary Judgment; Defendant Gandy's Motion for Summary Judgment or, in the Alternative, Motion to Dismiss; Defendant Fogarty's Motion for Summary Judgment; and a Motion to Dismiss by Defendants Cline, Boren and Halligan. On February 6, 2002, the Court held a status and scheduling conference and set deadlines for the filing of dispositive motions.

On June 14, 2002, the Court granted Plaintiff's motion and denied all of the Defendants' motions. The Court found that the Act was unconstitutional based on each of the claims raised by Plaintiff: that the Act lacked a judicial bypass, it lacked a medical emergency exception, and it is impermissibly vague. The Court's ruling forbids Defendants from enforcing the Act against Plaintiff. Thus, through this litigation, Plaintiff achieved the goals of its suit. Because Plaintiff has prevailed on its claims and obtained the relief sought, it is entitled to recover a "fully compensatory fee." Hensley v. Eckerhart, 461 U.S. 424, 435 (1983) ("[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee").

### B.   Plaintiff's Fee Request is Reasonable.

In this case, Plaintiff has calculated its fee request by multiplying the number of hours reasonably spent on this case by reasonable hourly rates. This type of calculation – known as the "lodestar" – is "presumed to be the reasonable fee contemplated by § 1988." City of Riverside v. Rivera, 477 U.S. 561, 568 (1986). See also Ramos v. Lamm, 713 F.3d 546, 552 (10th Cir. 1983) ("The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.") (quoting Hensley, 461 U.S. at 433).

To determine the reasonableness of the hours expended and rates charged, courts routinely conduct a case-specific analysis that takes into consideration, <u>inter alia</u>, the time and labor required; the experience, reputation and expertise of the lawyers; and the results obtained. <u>Hensley</u>, 461 U.S. at 430 n.3. Such an analysis establishes the reasonableness of Plaintiff's fee request here.

### 1. The Nature and Extent of Services Rendered by Plaintiff's Attorneys was Appropriate.

As demonstrated by the declarations of M.M. Hardwick, Bebe Anderson and Jody Ratner, counsel have carefully documented the hours spent on the case and how those hours were allotted to various tasks. In this case, Plaintiff's counsel have exercised appropriate billing judgment by ensuring that the fee request does not include hours that are excessive, redundant or otherwise unnecessary. Moreover, Plaintiff's counsel are not seeking compensation for all time spent by Ms. Anderson and Ms. Ratner and are seeking compensation for necessary travel time at a reduced rate. Most substantially, Plaintiffs have not requested fees *at all* for over 60 hours spent by fellowship attorney Maya Manian, a 1998 law graduate, conducting research on Eleventh Amendment immunity issues and drafting opening and responsive briefs addressing that issue; over 40 hours spent by fellowship attorney Adrienne Lockie, a 2000 law graduate, conducting research on ripeness issues and drafting opposition briefs on that issue; and the hours spent by law student interns who performed legal and factual research, see <u>Ramos</u>, 713 F.2d at 558-59 ("If those services [of law student who serves as intern] are not reflected in the area rate, the court may award them separately as part of the fee for legal services."). Finally, Plaintiff also does not seek compensation for the time spent preparing this fee application. (See Anderson Decl. ¶¶ 2-3, 5, 12; Ratner Decl. ¶¶ 2-3; Hardwick Decl. ¶ 6.) Thus, Plaintiff's application significantly undercounts those hours necessarily spent on this case.

Accordingly, and particularly in light of the "excellent results" obtained in this case, "the attorney's fees should encompass all hours reasonably expended," and no reduction in the hours should be made. Ramos, 713 F.2d at 556. Indeed, the Tenth Circuit has cautioned that where excellent results are obtained, the court should not reduce hours even if the plaintiff failed to prevail on every contention, which is not the case here. See id.

2. **The Hourly Rates Sought by Plaintiff's Attorneys are Appropriate Based on Customary Fees and the Quality of the Work.**

Reasonable hourly rates under Section 1988 are the prevailing market rates "in the relevant community." Blum v. Stenson, 465 U.S. 886, 895 (1984). The Tenth Circuit has held that "the first step in setting a rate of compensation for the hours reasonably expended is to determine what lawyers of comparable skill and experience practicing in the area in which the litigation occurs would charge for their time." Ramos, 713 F.2d at 555. "Salaried public interest firm lawyers," such as attorneys Anderson and Ratner, "should be assigned a billing rate equal to their counterparts in expertise in private practice." Id.[2] Accordingly, "the court should establish, from the information provided to it and from its own analysis of the level of performance and skills of each lawyer whose work is to be compensated, a billing rate for each lawyer based upon the norm for comparable private firm lawyers in the area in which the court sits calculated as of the time the court awards fees." Id.

The accompanying declarations establish that the hourly rates sought by Plaintiff's attorneys are reasonable for attorneys of their skill, experience, and reputation. See Frasier Decl. ¶¶ 5-7. See also Planned Parenthood v. Miller, 70 F.3d 517 (8th Cir. 1995) (in challenge to South Dakota abortion law mandating parental notification and waiting periods, approving fee

---

[2] Although the Tenth Circuit has left open the possibility for out of town lawyers to seek out of town rates in unusual cases, see Ramos, 713 F.2d at 555, Plaintiff here does not seek New York rates for its New York-based lawyers.

award rates ranging from $160 to $260 per hour because the prevailing plaintiffs' attorneys were "leaders in the field of reproductive rights law" with "extensive experience."). In addition, the rates reflect the attorneys' extensive experience in this type of litigation. (See Anderson Decl. ¶¶ 2, 8.)

Attorney Hardwick, a 1976 law graduate, requests of rate of $150.00 per hour, the rate she charges in private practice in Tulsa, Oklahoma. (See Hardwick Decl., ¶ 8.) The Center for Reproductive Law and Policy ("CRLP") seeks an hourly rate of $250.00 for the work of Bebe J. Anderson, a 1981 law graduate, and an hourly rate of $185.00 for the work of Jody Ratner, a 1998 law graduate. These rates are comparable to the rates charged by private attorneys in Tulsa, Oklahoma with their level of specialization in their field and their years of experience. (See Frasier Decl. ¶¶ 5-7.) Notably, the requested rates for Plaintiff's New York-based attorneys -- Ms. Anderson and Ms. Ratner -- are well below the market rate for partners and mid-level associates at New York law firms. (See Anderson Decl., Exh. C).

### 3. Plaintiff Obtained Excellent Results, Efficiently and Expediently.

The "degree of success obtained" is the "most critical factor" in determining the reasonableness of the fee award. Farrar, 506 U.S. at 114 (citing Hensley, 461 U.S. at 436). Without question, Plaintiffs have obtained "excellent results," obtaining a ruling that prevents Defendants from enforcing the Act against Plaintiff and declares the Act to be unconstitutional on three independent grounds. As a result, Plaintiffs will be able to continue to provide constitutionally protected and safe abortion services to their minor patients without fear of being subject to unlimited civil liability. Moreover, because of their extensive experience in the issues, Plaintiff's attorneys obtained these results efficiently and expediently. Accordingly, Plaintiff's attorneys should be fully compensated for their time and effort.

### C. Awards in Similar Cases.

Attorneys' fees and costs have almost universally been awarded in successful challenges to laws restricting abortion or other reproductive health services over the last ten years. See, e.g., Carhart v. Stenberg, 192 F.3d 1142, 1152 (8th Cir. 1999) (upholding award of attorneys' fees against government official in successful challenge to Nebraska abortion statutes); Guam Soc'y of Obstetricians & Gynecologists v. Ada, 100 F.3d 691 (9th Cir. 1996) (approving fee award of attorneys' fees in challenge to Guam's law banning abortion); Planned Parenthood v. Miller, 70 F.3d 517 (8th Cir. 1995) (approving fee award in challenge to South Dakota abortion law mandating parental notification and waiting periods); Jane L. v. Bangerter, 61 F.3d 1505 (10th Cir. 1995).

### II. PLAINTIFF IS ENTITLED TO COSTS.

Under Section 1988, "items that are normally itemized and billed in addition to the hourly rate should be included in fee allowances in civil rights cases if reasonable in amount." Ramos, 713 F.2d at 559. Travel expenses, paralegal services, photocopying, postage and long distance telephone charges are normally itemized and billed in addition to the hourly rate in Tulsa, Oklahoma law firms. (See Frasier Decl. ¶ 8.) Here, Plaintiffs seek recovery of the following litigation expenses: airfare and transportation costs. Again, Plaintiff's attorneys have been extremely conservative in billing for costs and are not seeking recovery for the costs of phone calls, copying, postage, or overnight delivery services, or even meals while traveling.

### CONCLUSION

To summarize, Plaintiff's total request for fees and costs breaks down as follows:

Bebe J. Anderson

| | |
|---|---|
| 341.1 hours @ $250/hr | $ 85,275.00 |
| 40.6 hours @ $125 hour (travel time) | $ 5,075.00 |

Jody Ratner

| | |
|---|---|
| 139.1 hours @ $185/hr | $ 25,733.50 |
| 34.4 hours @ $92.50 hour (travel time) | $ 3,182.00 |
| M.M. Hardwick (21.3 hours @ $150/hr) | $ 3,195.00 |
| Related expenses | $ 2,791.50 |
| **TOTAL FEES AND COSTS** | $ 125,252.00 |

In addition, Plaintiff is separately seeking $ 716.50 in taxable costs.

For all the foregoing reasons, Plaintiff respectfully requests that the Court grant its application for attorneys' fees and costs, in the total amount of $ 125,252.00.

Dated: June 27th, 2002.

Respectfully submitted,

*[signature: Jody Ratner]*

Bebe J. Anderson*
Jody Ratner*
The Center for Reproductive
  Law & Policy
120 Wall Street, 14th Floor
New York, NY 10005
(917) 637-3600
(f) (917) 637-3666

M. M. Hardwick, OBA #3847
P.O. Box 35975
Tulsa, OK 74153
(918) 749-3313
(f) (918) 742-1819

Counsel for Plaintiff

*Application for admission *pro hac vice* granted.

- 9 -

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and accurate copy of:

- MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND RELATED EXPENSES

was sent via First Class Mail this 27th day of June, 2002, to the following:

ELIZABETH SHARROCK
Assistant Attorney General
Chief, Litigation Division
Office of the Attorney General
4545 N. Lincoln Blvd., Suite 260
Oklahoma City, OK 73105-3498

JILL L. FISHER
Legal Counsel
Office of Legal Counsel
660 Parrington Oval, Suite 213
Norman, OK 73019-3078

ANDREW TEVINGTON
Office of General Counsel
Oklahoma Health Care Authority
4545 N. Lincoln Blvd, Suite 124
Oklahoma City, OK 73105

_Jody Ratner_
Jody Ratner